MILLER, Plaintiff and Appellant, vs. MILWAUKEE ODD FELLOWS TEMPLE, INC., and others, Defendants and Respondents, TRUSTEES OF EXCELSIOR LODGE No. 20 and others, Defendants and Appellants.

*December 10, 1931—January 12, 1932.*

548

550

551

For the plaintiff appellant there was a brief by *Lenicheck & Boesel* and *H. A. Kovenock,* all of Milwaukee.

For the defendant appellants there was a brief by *Wheeler & Witte* of Milwaukee, and oral argument by *Lyman G. Wheeler.*

For the defendant respondents there was a brief by *Seher & Seher* of Milwaukee, and oral argument by *Walter G. Seher.*

ROSENBERRY, C. J. The outline of the pleadings and conclusions of law merely sketch the nature of the controversy. It is not deemed necessary to set out in full either the findings of the trial court or the objections to the title made by plaintiff's attorneys. While the action is one in form for declaratory relief, it has all of the essential characteristics of an action for specific performance, for if it is adjudged that plaintiff secures a marketable title by reason of the conveyance contracted for between him and the Temple corporation, neither party to the controversy could properly refuse further performance.

The principal controversy in the case turns upon the question of whether or not the defendant Milwaukee Odd Fellows Temple is a valid, subsisting corporation. It appears that in 1916 Milwaukee Lodge No. 2 owned an equity in the real property in question; that between June and September other subordinate organizations and lodges joined with the Milwaukee Lodge No. 2 in a project to erect a building on the premises to provide suitable lodge halls and other rooms. The respective lodges agreed upon the amount of their respective contributions to the project. The equity was valued at $8,100, and to carry out the plan the seven subordinate lodges organized the Milwaukee Odd Fellows Temple for the purpose of holding title to the real estate in question. Articles were filed, and on January 2, 1917, the trustees of Milwaukee Lodge No. 2 conveyed the title to the property in question to the Temple corporation. On January 19, 1917, certificates of stock were issued to the respective lodges in the amount of their respective contributions, the total amount issued being 129 shares of the par value of $12,900. Two lodges originally concerned in the enterprise were subsequently consolidated, their respective certificates surrendered and canceled, and a new certificate issued to the consolidated lodge. Each of the lodges elected trustees, and these trustees represented the lodges at all meetings of stock-

holders of said Temple corporation, and the directors of the Temple corporation were chosen from among these trustees. Shortly thereafter the Temple corporation proceeded to the erection of a lodge building and for that purpose negotiated a loan of $40,000, secured by a mortgage upon the premises. By-laws were adopted and subsequently all lodges holding stock participated in the conduct of the business and affairs of the Temple corporation. In 1926, the receipts being inadequate to defray the cost of up-keep of the building, interest, and bonds, the question of sale of the premises was considered. Negotiations were had which subsequently resulted in the making of the contract between the plaintiff and the Temple corporation. A special meeting of the stockholders was convened on August 13, 1928. This meeting was attended by Seldon R. Newton, Robert Lippert, and Victor S. Craun of Milwaukee Lodge No. 2, Carl Runge of Excelsior Lodge No. 20, Emil H. Wirth and F. M. Billings of Badger State Lodge No. 11, R. H. Hoe, David Turner, and J. H. C. Baumann of Wisconsin Encampment No. 1, and Jennie Bunde of Rebekah Lodge No. 1, those in attendance representing 128 shares of the 129 outstanding shares of stock. Subsequently, on the same date, pursuant to a regular call, the board of directors of the Temple corporation had a meeting, the contract in question being approved both by the stockholders and the board of directors.

The question is whether or not a deed executed by the Temple corporation pursuant to this authority will convey a title to the premises in question. It is the contention of the appealing defendants that the Temple corporation was never legally organized and that the property is held by the respective lodges in joint ownership in proportion to their respective contributions thereto. No question seems to be raised that the title was in Milwaukee Lodge No. 2. While some question is raised as to the legality of the conveyance by Milwaukee Lodge No. 2 to the Temple corporation, it is con-

sidered that the trial court correctly held that the conveyance operated as a transfer of title. As already stated, the stock of the Temple corporation was issued in the name of the respective lodges. By the provisions of sec. 188.03, Stats., the title to all real and personal property conveyed to the lodges vests in such trustees and their successors in office "as fully as if originally conveyed to them." By sec. 188.02 the trustees are created a corporation for all purposes for which they are authorized to act.

We are first met with the proposition that at common law no corporation could be the holder of the stock of another corporation and that no act of the trustees or of the Temple corporation has been performed which brings the respective corporations within the terms of the statute. While the trustees of the respective lodges are deemed a corporation by the statute, they are a corporation with limited powers and brought into being for specified purposes, among which are the acquiring and holding of property used and useful for lodge purposes. The purpose of the issuing of stock by the Temple corporation to the respective lodges being to provide the respective lodges with a suitable meeting place, it is considered that the respective subordinate lodges might properly hold stock for that purpose and that their right to do so is a necessary implication from the powers expressly conferred by the statute. If the subordinate lodges can take title to and hold other real estate and personal property for the purpose of providing meeting places, we see no reason why they are not able to hold corporate stock for the same purpose. This is not to say that they can hold stock in business corporations generally. The stock having been issued to the respective lodges, the title thereto by the terms of the statute vested in the trustees. It appears without dispute that from the organization of the Temple corporation in 1916 down to 1928, the trustees of the respective lodges were treated as stockholders of the corporation, the directors

and officers of the Temple corporation were elected from among the trustees, and each lodge was given a voice in the corporate management and no objection was raised thereto by any one.

It is urged that the trustees of the respective subordinate lodges did not convene as such and that their votes with respect to the corporate control of the Temple corporation were their votes as individuals and not as trustees for that reason. If this claim had been seasonably asserted, much could be said in support of it. The most that can be said is that it constituted a mere irregularity, for so far as the record discloses down to 1928 effect was given to the will of each subordinate lodge by its trustees. No claim is made that the trustees of any lodge in any way violated their trust. The subordinate lodges having for this long period of time acquiesced in the method employed, are for the reasons stated by the trial court now estopped from asserting that the acts of the Temple corporation, duly authorized by its stockholders and directors, are invalid. It would be unjust and inequitable to permit the subordinate lodges to so act and receive all the benefits and then refuse to be bound when a step was proposed of which they did not approve. There is no claim in the case that the price stated in the contract is not a fair one or that there has been any overreaching or oppressive action of any kind. It is quite apparent that some of the subordinate lodges do not wish to go further because with the proceeds of the sale they will not be able to provide themselves with as good a meeting place as they now have. That is a matter of internal policy, which under the plan adopted must be settled by the representatives of the lodges themselves.

Considering ch. 188 in connection with the organization of the respective subordinate lodges, the trial court correctly held that the plaintiff would take title to the premises in question by a conveyance thereof from the Temple corpora-

tion. While the method of organization was irregular and the trustees failed to act in a formal manner, it is considered that the Temple corporation was at all times a *de facto* corporation and that the trustees as owners of the stock might properly act as stockholders, and that the directors chosen from the stockholders could properly elect from among their number officers as provided in the articles of incorporation. Here there was a statute permitting the formation of such a corporation, an attempt in good faith to comply therewith, articles were drawn and signed in the form required by statute, they were recorded, the corporation was organized, the right to exercise the franchise of being a corporation was asserted and the franchise was used in good faith, all those who were parties to this action concurred therein for many years; so that under the circumstances of this case there was a corporation *de facto,* which is sufficient for the purposes of this case, it not being subject to a collateral attack. *Franke v. Mann,* 106 Wis. 118, 126, 81 N. W. 1014; 1 Fletcher, Cyc. Corp. ch. 10, p. 529, cases cited p. 541; *Independent Order of Foresters of Canada v. United Order of Foresters,* 94 Wis. 234, 68 N. W. 1011; *State ex rel. Horton v. Brechler,* 185 Wis. 599, 202 N. W. 144.

It appears that the present and future use of the premises in question will be regulated and affected by a certain zoning ordinance adopted by the city of Milwaukee in November, 1920. The court found that the plaintiff was familiar with the existence and provisions of and intended to make the purchase subject to the provisions of the ordinance in question. It is claimed, however, that under the decision in *Genske v. Jensen,* 188 Wis. 17, 205 N. W. 548, and *Rusch v. Wald,* 202 Wis. 462, 232 N. W. 875, the restrictions upon the use of the premises imposed by said ordinance are incumbrances which entitle the purchaser to declare the contract at an end. It is considered, however, that such cases are not authority for that proposition. In *Rusch v. Wald*

it was expressly represented to the intending purchaser, with design to deceive him, that the premises were not subject to the zoning ordinance. This representation was held to be fraudulent and to sustain an action to recover the purchase price on the ground of fraud. In *Genske v. Jensen* there was a contract for the exchange of property which required an abstract of title showing title to be marketable. It was there held that the purchaser cannot be compelled to accept property subject to building restrictions imposed by covenants in a deed or agreement unless excepted by the terms of the contract, even though a court of equity would not enforce them because they have become obsolete and inoperative by reason of non-observance. There was quoted in the opinion in *Genske v. Jensen, supra,* a general statement taken from 39 Cyc. 1500, to the effect that a purchaser may also be justified in refusing to perform because of the existence of a valid building or other restriction imposed by statute or ordinance or by authorized municipal authorities or by an existing charge against the property by reason of violation of such restriction. The cases cited with one exception relate to charges against the premises for violation of ordinances, which is an entirely different thing than a limitation upon the use of premises imposed by a valid zoning ordinance.

The other case, *Daniell v. Shaw,* 166 Mass. 582, 44 N. E. 991, held that the purchaser ought not to be compelled to accept a title conceded not to be good if a certain statute was not constitutional, leaving the purchaser exposed to the chance of litigation to determine whether or not the statute was constitutional.

So that in fact the text is not supported by any of the authorities cited if it is construed to mean that a valid zoning ordinance or other limitation upon the use of the property imposed by law is an incumbrance within the meaning of that term as ordinarily used in conveying. See, also, *Lincoln Trust Co. v. Williams Bldg. Corp.* 229 N. Y. 313, 128 N. E.

209; *Isaacs v. Schmuck,* 245 N. Y. 77, 156 N. E. 621; *Wheeler v. Sullivan,* 90 Fla. 711, 106 South. 876; 57 A. L. R. 253, "Marketable title," p. 1253, "Zoning ordinance or statute," where the cases are collected and analyzed, p. 1424.

This matter was given very careful consideration by the trial court and it is considered that it correctly held that the restrictions imposed by the zoning ordinance or the laws of the state are not incumbrances within the meaning of that term as used in a contract to convey real estate. In this respect such restrictions are entirely different than the restrictions created by deed or contract.

The contract by its terms excepted a mortgage of $24,000, which the plaintiff purchaser agreed to assume. The abstract shows a mortgage for $40,000. With respect to this the trial court found:

"It appears that the actual balance of principal unpaid upon the mortgage agreed to be assumed by plaintiff is somewhat in excess of the amount stated in plaintiff's contract and that there also remains unpaid a small instalment of a special tax in the amount of $46.76. These amounts can readily, and equitably should, be adjusted by abatement of the balance of purchase money still to be paid by plaintiff. The provisions of the contract also call for other adjustments which likewise can readily be made in the consummation of the transaction."

The conclusions of law as well as the judgment provide for these adjustments and an abatement of the unpaid purchase money as stated in the findings. We find no just ground for complaint on the part of the plaintiff or appealing defendants with respect to the findings and judgment. The exact amount of the unpaid part of the purchase price that should be abated was not found by the court because the contract specifically provides that it shall be determined as of the day when the transfer takes place.

All other matters in controversy are properly disposed of by the very careful opinion, findings of fact, and conclusions

of law made and entered by the trial court, which are affirmed.

We have carefully examined each of the propositions raised, but no useful purpose would be served by setting out these matters in detail except that reference perhaps should be made to the objections made by attorneys for the plaintiff under the heading "As to matters not appearing of record." These relate to inquiries as to ordinances, rules, and regulations restricting the use of the property, amount due on outstanding mortgage, which has already been referred to, the claim of title and interest of all persons in occupancy, as to which there is no intimation of any other occupancy than that of the parties to the litigation, inquiries as to outstanding lien claims, special taxes, surveys, easements, etc. These relate to matters which are not required to be exhibited in an abstract which is a history of the title to the property. Many things may exist *aliunde* the record which may affect the title of the property, but a vendor is not required to do more than present an abstract showing a marketable title. If there are in fact outstanding claims and equities which affect the title to the property that are not of record, the Temple corporation was not required to anticipate and foreclose these by its abstract of title, and under the findings of the trial court these matters are concluded by the judgment, all parties in interest being parties to the action and no such outstanding claims or defects having been established upon the trial. In this case the plaintiff assumed the burden of establishing the invalidity of the title to the property in question in the Temple corporation. His proof does not support that contention, hence the judgment properly adjudges a marketable title in the Temple corporation.

*By the Court.*—Judgment affirmed.

WICKHEM, J., took no part.