[No. 30137. Department Two. September 23, 1947.]

R. J. STONE, *Appellant,* v. J. H. SEXSMITH *et al.,* *Respondents.*[1]

[1]Reported in 184 P. (2d) 567.

*John T. Raftis* and *Edge, Davenport & Edge,* for appellant.

*Thomas I. Oakshott,* for respondents Sexsmith.

*Albert I. Kulzer,* for respondent Yale Hotel Company.

HILL, J.—R. J. Stone, the appellant here, commenced this action to recover the cost of repairing and changing the electric installations in the Yale hotel, at Chewelah, Washington, which work was done on the order of the electrical inspection division of the department of labor and industries of the state of Washington. The defendants below, respondents here, were the Yale Hotel Company, a corporation, which owned the hotel, and J. H. and Olga Sexsmith, husband and wife, who were contract purchasers under a contract with the hotel company dated February 14, 1941. All dates referred to herein are in 1941 unless otherwise indicated. The Sexsmiths started operating the hotel in April. Inability to secure help and the state of Mr. Sexsmith's health prompted them to list their interest in the property for sale in July.

The appellant, an experienced hotel operator, became interested in acquiring the property. He came to Chewelah first on August 7th or 8th and thereafter was on the premises several times. On September 10th, he signed an agreement to purchase the building and equipment for seventeen thousand dollars, paying one thousand dollars on that date and agreeing to pay "about" sixty-six hundred dollars on the closing of the transaction and "about" ninety-four hundred dollars by assuming the balance of the Sexsmith contract. The Sexsmiths approved and accepted the sale, as set forth in this agreement, on September 11th.

On September 12th, the Sexsmiths acquired knowledge that the wiring in the hotel was defective, and that the state would insist upon certain extensive changes. This information they did not convey to the appellant. (Appellant contends that the Sexsmiths knew about the defective wiring at an earlier date, but the trial court found that they did not acquire such knowledge until September 12th, and the evidence supports the finding.)

Appellant wanted one provision of the Sexsmith contract, which he was assuming, deleted, and that was agreed to and a memorandum evidencing the deletion was signed September 18th, when the transaction with the Sexsmiths was closed at the office of the attorney of the Yale Hotel Company. The Sexsmiths and appellant also signed, on that date, a document denominated an "Agreement of Sale," which was in fact a quitclaim and conveyance by the Sexsmiths to the appellant. At the same time, the Sexsmiths executed another quitclaim deed to the premises, which added nothing to the quitclaim and conveyance in the so-called "Agreement of Sale." Rents, insurance, and other items were prorated as of that date, and appellant immediately took over the active operation of the hotel and was still operating at the time of trial.

Appellant's first information concerning the defective wiring came in a letter from the state electrical inspector, dated December 1st, directing him to have certain changes made within sixty days from the date of the letter. The changes in the wiring required by the letter were made in 1945, three and a half years later, at a cost of $3,439.97. Appellant had commenced this action in April, 1943, apparently on the theories that there had been a fraudulent concealment of material facts, and that the condition of the wiring constituted a breach of the agreement that the property was to be free from encumbrance.

 We are in entire accord with the trial court in its finding that no actionable fraud was established. The respondent Yale Hotel Company was not selling appellant anything; it granted him a concession in making a deletion in the Sexsmith contract, but it was under no obligation to tell appellant anything about the wiring if, in fact, its officers knew that it was defective. Respondents J. H. and Olga Sexsmith had no knowledge of the defective wiring on September 11th (a disputed fact determined adversely to appellant), on which date they entered into a binding and enforcible agreement with appellant whereby they agreed to sell and he agreed to buy the hotel and its equipment (appellant contends that the sale was not made until September

18th, but our cases, such as *Herrett v. Wershing,* 170 Wash. 417, 16 P. (2d) 608, are adverse to his contention); and the Sexsmiths, while we do not approve of their silence, were under no legal obligation to disclose to appellant anything they learned about the wiring subsequent to the time·they had entered into an enforcible agreement to sell.

We turn now to a consideration of the question of whether the condition of the wiring was an encumbrance. The only obligations of the Yale Hotel Company rest upon its agreement

" . . . to furnish an abstract of title certified to the date hereof, showing good title in first party free from encumbrance, whenever said second parties make full payment of the purchase price herein agreed for, "

and to deliver " . . . also a warranty deed for the said premises and property, free from all encumbrance," upon full payment of the purchase price and the complete performance of the conditions and terms of that agreement. There is no allegation or proof that appellant has made full payment of the purchase price.

By the agreement of September 11, 1941, the Sexsmiths agreed that the building and equipment were "to be free from all encumbrance except above mentioned contract."

Appellant's position must be that the condition of the wiring, and not the actual order of the inspector on December 1, 1941, constituted the encumbrance.

■ We find no support in the statute under which the state electrical inspector issued the order of December 1st (Rem. Rev. Stat. (Sup.), § 8307-8 [P.P.C. § 535-15]) or in any cases anywhere, for appellant's contention that the defective wiring constituted an encumbrance within the purview of an agreement to convey "free from all encumbrance." The state electrical inspector may, under certain conditions, "disconnect or order the discontinuance of electrical service," but that, while it may be an inconvenience and a restriction upon the use of the property, is not an encumbrance.

While electric, plumbing, sanitary, fire, safety, and building inspectors, and perhaps others, may restrict or prohibit

the use of property in the exercise of the police power, we know of no case holding that such restrictions or prohibitions constitute a breach of a covenant against encumbrances or quiet enjoyment. On the contrary, as is said in 21 C. J. S. 955, § 98,

". . . a claim for breach of covenant cannot be predicated on the condition of the premises as to dilapidation or the existence of a nuisance or the necessity of repair or alteration to conform to building laws."

The only case that we have been able to find bearing directly upon the subject is *Berger v. Weinstein,* 63 Pa. Super. Ct. 153, decided in 1916. The plaintiff had been compelled to reconstruct a building wall which was only five when it should have been nine inches thick. He secured a judgment for the cost of reconstruction against defendant, who had constructed the wall and then sold him the property. The judgment was reversed, the court saying:

"Do the facts averred in the statement and disclosed by the testimony constitute an encumbrance within the covenant? An encumbrance is any right to, or interest in, land which may subsist in third persons to the diminution of the value of the estate of the tenant but consistently with the passing of the fee: . . . Familiar illustrations are mortgages, judgments and other liens, leases, executory contracts of sale and taxes assessed. Some easements have been held to be encumbrances because of their nature and the fact that they are appurtenant to the land: ways, water rights and the like. But whether lien, easement or otherwise the impediment is a right to, or interest in, land. The covenant against encumbrances is in praesenti and is broken when the deed is delivered, if broken at all. It does not include charges created after the execution of the contract: *Funk v. Voneida,* 11 S. & R. 109. It is not claimed that any lien existed at the time the defendants conveyed the property, nor was there any easement. The defect alleged was a condition of a portion of the party wall in violation of the building law. This was a condition which, if it existed, the law authorized the proper authorities to suppress in the manner pointed out in the statute. This statute applies not only to owners, builders, contractors, architects or workmen, who shall make any alteration, construction or removal of any building or structure whatsoever, in violation of any of the

provisions of the act, but also to any one who may become an owner thereof after the work has been done and who shall omit, neglect or refuse to remove the same 'if dangerous or in violation of this act.' It is the application of the police power to the regulation of buildings and if the covenant against encumbrances includes such a case it would seem to follow as a logical consequence that in every instance where there was a conveyance of real estate, the condition of which in some respect was prohibited by a statute or ordinance, and this condition had been brought about by the covenantor or had come into existence during his tenure, a liability for the cost of abating the condition would arise, where such abatement had taken place or for damages for the breach of the covenant, even if no abatement occurred. *With such construction of the statute every grantor of real estate with a building thereon constructed or altered or repaired by himself would become a warrantor that the building complied in all respects with the building laws or ordinances in force in the locality.* An examination of the Act of 1899, will show in how many respects the construction and alteration of buildings is regulated and in how many ways considerable or inconsiderable these regulations might be overlooked or avoided by an owner and to what an extent the owner may be under the control of the contractor with reference to the work. Some defects go to the condition of the building rather than to the quality of the title. *Although the statute creating covenants has been in existence for two hundred years our attention has not been called to a case in which an action has been successfully prosecuted on the theory advanced by the plaintiff. The condition of the premises as to dilapidation or the existence of a nuisance or the necessity of reparation to conform to building laws has not so far as we have been able to discover ever been held to be a fact affecting the title or in the class of encumbrances.*" (Italics ours.)

We therefore conclude that there was no fraudulent concealment by any of the respondents, and that the condition of the wiring, which the state thereafter, in the exercise of its police power, compelled to be repaired and replaced, did not constitute an encumbrance.

The judgment is affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.