MARATHON BUILDERS, INC. *v.* MONTGOMERY COUNTY PLANNING BOARD OF THE MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION

[No. 186, September Term, 1966.]

*Decided April 5, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*Patrick C. McKeever,* with whom were *McKeever & Fitzpatrick* on the brief, for appellant.

*Harry W. Lerch,* with whom was *D. Warren Donohue* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Montgomery County, sitting in equity, dismissing plaintiff-appellant's, Marathon Builders, Inc., bill of complaint for a mandatory injunction requesting that the defendant-appellee, Montgomery County Planning Board of the Maryland-National Capital Park and Planning Commission, be compelled to approve a preliminary plan for the subdividing of the appellant's property.

The parties have stipulated the following facts. On December 18, 1961, a tract of land containing 3.762 acres, located in Montgomery County, was deeded to appellant by Milton Polinger, et al. (hereinafter referred to as Polinger). The land conveyed had originally been part of a larger unsubdivided parcel consisting of 9.895 acres, owned by Polinger. In December of 1953, Polinger had filed an application with the proper authorities for permits to erect 15 apartment buildings, consisting of 217 units, on the unsubdivided tract. At the time the application was made, the tract was zoned "Residential-C"; requiring 625 square feet of land for each dwelling unit constructed. § 176-5 c (1), Mont. Co. Code (1950). The apart-

ment buildings were erected fronting on Quebec Terrace in conformity with the applicable zoning classification and none of the buildings so erected are on the 3.762 acre tract now owned by appellant, which was carved out of the original 9.895 acre tract.

Subsequently on January 1, 1954, a new comprehensive zoning map and ordinance, adopted by the Montgomery County Council, became effective. The effect of this new comprehensive zoning plan was to rezone the entire 9.895 acre parcel R-30 (multiple-family, low density residential). The R-30 classification did and still does require 3,000 square feet of land per dwelling unit. § 107-10 c. Mont. Co. Code (1955); § 111-13-(c)(1), Mont. Co. Code (1965).

The construction of the 217 units by Polinger more than exhausted the remaining open space area in the original tract necessary to meet the density requirements of the R-30 classification, effective January 1, 1954. However, the project was saved by a retroactive clause which honored all applications filed within the six months preceding the effective date of the comprehensive zoning plan as long as construction was started on, or before, August 31, 1954. § 107-20 g (2), Mont. Co. Code (1955). Between January 1, 1954 and December 19, 1966, the time of the conveyance to the appellant, Polinger conveyed various apartment buildings to third persons, until all that remained vested in Polinger was a long narrow strip of unimproved land located between the Quebec Terrace apartments on the south and fronting Piney Branch Road on the north and bounded by University Boulevard East and New Hampshire Avenue, containing the 3.762 acre tract, which was conveyed to the appellant.

The above mentioned conveyances were all made in violation of § 101-3 of the Montgomery County Code (1960), (for present subdivision regulations, see Ch. 104, Mont. Co. Code (1965)) which sets forth the proper procedure for the preparation and filing of subdivision plats.

In May 1962, appellant filed a zoning application with the Montgomery County Council requesting that its 3.762 tract be reclassified from R-30 to R-10 (high density residential). On September 11, 1962, appellant's application was denied, the

Council stating: "We believe that the subject property is not eligible for reclassification inasmuch as it appears that it is part of the net lot area for the apartment buildings fronting on Quebec Terrace * * *." The Council also found no changes in the character of the area to warrant rezoning, assuming the property was found to be eligible for reclassification.

On April 5, 1963, appellant filed a preliminary plat with the Montgomery County Planning Board of the Maryland-National Capital Park and Planning Commission, appellee, pursuant to § 101-3, Mont. Co. Code (1960), proposing to subdivide the 3.762 acre tract in accordance with the requirements of the R-30 classification. By letter of December 4, 1963, appellant was advised that its plat had been disapproved on the ground that the subject parcel constituted part of the net lot area already devoted to the existing apartments lying south of its property and fronting Quebec Terrace.

Appellant then filed its bill of complaint praying that the appellee be directed to approve its plat alleging that the appellee's action in rejecting the same "was arbitrary, capricious, contrary to law and confiscatory of the rights * * * in its own property, * * *." The appellant also alleged that it would suffer irreparable damage unless allowed to use its property in accordance with R-30 zoning classification. A hearing was held on December 15, 1965, and in a memorandum opinion filed March 7, 1966, the chancellor found:

> "It is clear that the original owners utilized the 3.762 acres to meet the density requirements under the zoning ordinance for the apartment units which were developed.
>
> * * *
>
> "We find that the land in question was sold by the sellers thereof in violation of the requirements of Section 101-3 (a) of the Montgomery County Code; that the plaintiff knew, or should have known that at the time of purchase that apartments had been built by the seller and that the parcel purchased by plaintiff had not theretofore been subdivided; the defendants' denial of the submitted plat was made in accordance with the

letter of its authority contained in Section 104-4 (c) (1) (b).

" 'The petitioner in mandamus proceedings must show a clear legal right to which he *is* entitled and an *imperative duty* on the part of respondent.' (Emphasis supplied). *Board of Commissioners v. Oxford Development Company*, 209 Md. 373. This the plaintiff has failed to do. Further, 'On an appeal from an order of a zoning board, it is not the function or the right of the reviewing Court to zone or rezone, but only to decide whether the board's action was arbitrary, capricious, discriminatory or illegal. * * *.'

"The Court has found no Maryland authorities, nor has plaintiff cited any in its brief that would afford the plaintiff relief upon the facts which reflect that he has, unfortunately, purchased a $15,000 'pig in a poke'—3.72 acres of land upon which he has and is paying a skyrocketing property tax rate and which he cannot develop unless, I think, he is given legislative relief.

"The Court finds that the action of the defendant was not arbitrary, capricious, discriminatory or illegal. The relief prayed for is denied. And it is further ordered that the Bill of Complaint, be, and it is hereby dismissed."

From the order dismissing the bill of complaint this appeal was taken.

The question before this Court is whether the lower court was correct in sustaining the Planning Board's finding that the appellant's land had been previously used by its owners to satisfy the density requirements of the R-30 classification established by the comprehensive zoning map and ordinance adopted by the Montgomery County Council, effective January 1, 1954, on the ground that the Planning Board's action was neither arbitrary, capricious nor contrary to law.

This Court is of the opinion that the holding of the chancellor was correct.

The authority vesting the appellee with the power to approve

or disapprove any development or of the construction of any building within a subdivision is found in § 104-7 platting requirements of Montgomery County Code (1965) (superseding § 101 3 (a), Mont. Co. Code (1960)), which provides as follows:

> "Whenever any subdivision or resubdivision of land is proposed to be made within the district, and before any contract for the sale of or any offer to sell such subdivision is made, or before any development or construction of any building take place within a subdivision, or any part thereof, the subdivider thereof or his agent shall file, in accordance with the procedure prescribed in this chapter, a plat of the proposed subdivision with the board for its approval and the approved record plat shall be recorded in the land records of the county, except as provided in section 104-8 of this Code. (Ord. No. 4 115, sec. 1, Oct. 17, 1961)."

Section 111-4—"General Regulations"—Mont. Co. Code (1965) (previously § 104-4, Mont. Co. Code (1960)) provides in part:

"(c) *Area:*

> "(1) YARDS AND OPEN SPACES:
> "a. No building shall be erected, nor shall any existing building be altered, enlarged, moved or rebuilt, nor shall any open space surrounding any building be encroached upon or reduced in any manner, not in conformity with the yard, lot, area and building location regulations hereinafter designated for the zone in which such building or open space is located, except as otherwise specially provided.
> "b. No yard or other open space provided about any building for the purpose of complying with the provisions of this chapter shall be considered as a yard or open space for any other building; and no yard or other open space of a building on one lot shall be considered as a yard or open space for a building on any other lot."

There is no question but that the zoning ordinance passed by the County Council on December 15, 1953, and effective January 1, 1954, classifying the 9.985 acre Polinger tract as R-30, which requires 3,000 square feet of net lot area per dwelling unit, extinguished any inchoate right which Polinger might previously have had to develop the tract under the "Residential-C" classification which required only 625 square feet of land per dwelling unit. That the passage of the ordinance of December 15, 1953, had such an effect becomes evident when we consider the decision of this Court in *Mandel v. Bd. of County Comm'rs,* 238 Md. 208, 208 A. 2d 710 (1965), a case wherein a rezoning classification was enacted by the County Zoning Board while the property owners were litigating an appeal from a decision of the Board concerning the use of their property under the former zoning classification, the appellants contending that such action by the Board taken while appeal was pending violated their constitutional rights. This Court in *Mandel v. Bd. of County Comm'rs, supra,* speaking through Judge Oppenheimer, said at p. 216:

"it is clear that the Board, as a legislative body, if its action is otherwise in accordance with law, can validly change a zoning regulation even though the effect of its action is to eliminate any inchoate rights which property owners may have asserted * * * under the pre-existing regulations."

Certainly if such a change in classification has the effect of extinguishing existing rights during the pendency of an appeal involving the exercise of rights under a former classification, *a fortiori* a change in classification as a result of the passage of a comprehensive rezoning ordinance would have at least the equal effect of terminating any rights unexercised as of the effective date of the change in classification. This Court has made frequent declarations in zoning cases that courts are bound to decide cases according to existing laws. *Yorkdale v. Powell,* 237 Md. 121, 205 A. 2d 269 (1964).

Theoretically, Polinger, had he acted prior to January 1, 1954, the effective date of the comprehensive rezoning plan, could have subdivided the 9 acre tract into several lots and computed

the density of each lot independently. Thus, he could have insulated the 3.762 acres now vested in the appellant from the original tract. However, after the effective date of comprehensive rezoning plan, such action was not available to him and the entire 9.985 acres were taken into consideration in computing the density requirements predicated on the 217 dwelling units constructed on the property. Cf. *Mandel v. Bd. of County Comm'rs, supra; Yorkdale v. Powell, supra; Grau v. Board of Zoning Appeals,* 210 Md. 19, 122 A. 2d 824 (1956); *Lake Fls. Assn. v. Board of Zon. Appeals,* 209 Md. 561, 121 A. 2d 809 (1956); *Banner v. Home Sales Company D,* 201 Md. 425, 94 A. 2d 264 (1953).

The appellant contends that it stands in the shoes of an innocent purchaser and that it should not be responsible for the exhaustion of the area consumed by the density requirements attendant to the development and construction performed on the tract by its predecessors in title. No valid reason can be offered to sustain this contention. If it were to be held that the 3.762 acre tract owned by the appellant was not now to be considered a part of the original 9.985 acre Polinger tract, after it had once been used to make up the net lot area necessary to meet the density requirements under the R-30 classification, what would prevent the appellant, or its successors or assigns, once approval was granted and their development completed, to reconvey the tract back to Polinger, and thus enable Polinger, to achieve by indirection what he could not directly accomplish. This would establish a facile, but transparent, method for complete circumvention of the zoning laws.

The appellant contends that the lower court "regards the 'sin' of the grantor as somehow indelibly visited upon the land itself, and thereby upon the Appellant, the owner of the land"; and further contends that the court is endeavoring to punish it for the transgressions of Polinger.

We find little merit to this argument. Certainly, today rezoning restrictions on land being the rule rather than the exception, it is not too much to expect that the prospective owner make an intelligent inquiry into the land uses permitted and the effect that zoning has produced on the subject property and the tract of which it was once a part, rather than contenting him-

self with complete reliance on the bare evidence of fee simple title.

The effect which density control may have on the enjoyment of ownership of real estate, was noted by this Court in *Windsor Hills Imp. Ass'n v. Balto.*, 195 Md. 383, 73 A. 2d 531 (1950), wherein Judge Markell observed, at p. 392:

> "Zoning laws ordinarily restrict use, not alienation, of land. We need not undertake to say how far, if at all, zoning for singleness in use and ownership may operate to restrict alienation, or how zoning for singleness in use may be enforced after singleness in ownership may have been destroyed."

In the instant case the president of the appellant testified that he knew that the subject property had an R-30 classification. The lower court had before it a diagram of the property showing its area and the number of units already constructed thereon. The court also had the benefit of the finding of the Council that the 3.762 acre tract was a "part of the net lot area for the apartment buildings fronting on Quebec Terrace * * *."

As heretofore stated we are of the opinion that the lower court was correct in its finding that the action of the appellee Board in disapproving the proposed subdivision plan was not arbitrary, capricious or contrary to law.

The appellant brought this action in equity requesting an injunction, although it was by its nature a mandamus proceeding by which he also sought review of the action of an administrative body, which under Rule BE40 is clearly an action at law. The lower court, in dismissing the bill of complaint, quoted this Court in *Bd. of Co. Comms. v. Oxford Dev. Co.*, 209 Md. 373, 378, 121 A. 2d 239, 241 (1956), "the petitioner in *mandamus* proceedings must show both a clear legal right to which he is entitled and an imperative duty on the part of respondent." The appellant on appeal argued that the " 'clear legal duty' rule" propounded by *Oxford* "does not control where there is a disputed legal question," and where there are presented disputed legal questions, the court should not dispose of the matter without a consideration of these questions. The short answer to this contention is that a review of the record shows

the chancellor afforded the appellant a full hearing on the merits of the case and dismissed the bill because the appellant failed to prove its material allegations.

*Order affirmed with costs.*