MARATHON BUILDERS, INC. *v.* POLINGER ET AL.

[No. 59, September Term, 1971.]

*Decided November 12, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Patrick C. McKeever*, with whom were *Shaffer, McKeever & Fitzpatrick* on the brief, for appellant.

*Leonard S. Blondes* for appellees.

BARNES, J., delivered the opinion of the Court.

The question presented to us for determination in this case is whether the applicable provisions of the zoning ordinance of Montgomery County together with the violation by the grantors in the deed of the land involved of the Montgomery County subdivision regulations are a breach of the covenant against encumbrances in that deed.

The present case is the aftermath of our decision in *Marathon Builders, Inc. v. Montgomery County Planning Board*, 246 Md. 187, 227 A. 2d 755 (1967) in which we affirmed an order of the Circuit Court for Montgomery County denying the issuance of a mandatory injunction to command the Montgomery County Planning Board of the Maryland-National Capital Park and Planning Commission to approve a preliminary plan for the subdividing of the same 3.762 acre tract involved in the present case in accordance with the R-30 (Multiple-Family, Low Density Residential) zone classification, the Planning Board having disapproved the proposed subdivision on the ground that the 3.762 acre tract constituted part of the net lot area already devoted to the existing apartments lying south of the 3.762 acre tract.

The facts in the present case are undisputed and were submitted to the Circuit Court for Montgomery County (Miller, J.) upon a stipulation of facts. The stipulation indicated that in December, 1953, the appellees, Milton Polinger and others (collectively referred to as the Polingers) owned a 9.895 acre tract in Montgomery County.

At that time they applied to build 15 apartment buildings consisting of 217 units. The zoning ordinance then in effect in Montgomery County permitted construction of apartments with an area density of one unit per 625 square feet. In January, 1954, a new comprehensive zoning ordinance became effective in Montgomery County. The entire 9.895 acre tract was rezoned R-30 which required 3,000 square feet of land for each apartment unit. Under the new zoning, 217 apartment units would not have been permitted, but the zoning ordinance allowed the construction under a "saving" or "grandfather" clause.

Thereafter, the 9.895 acre tract was developed. Fifteen apartment buildings containing a total of 217 units were erected on that tract. These buildings were so situated that a 3.762 acre area of the entire tract remained unimproved, as well as a strip of land used for parking which separates the 3.762 acre tract from the apartment buildings. After completion of the apartment buildings, but prior to 1961, the Polingers conveyed all of the various buildings to third persons until all that remained of the original 9.895 acre tract was the strip of parking lot and the 3.762 acre tract (the subject property) which was conveyed to the appellant, Marathon Builders, Inc. (Marathon) in December, 1961.

In *Marathon v. Montgomery County Planning Board, supra,* we held that the conveyances made between January 1, 1954, and December, 1961, including the conveyance of the subject property to Marathon, were made in violation of Sections 101-3 and 104-4 c (1) (a) (b) of the Montgomery County Code (1960) inasmuch as subdivision plats of the various tracts were not filed and recorded.

Subsequent to its acquisition of the subject property, Marathon attempted to have the property rezoned from R-30 to R-10 (Multiple-Family, High Density Residential). All attempts to have the subject property rezoned or to use the property have been denied on the grounds that the property is part of the net lot area for the orig-

inal 9.895 acre tract; and since the entire density has already been used, the subject parcel cannot now be used.

This Court stated in the *Marathon* case that theoretically the Polingers could have, prior to January of 1954, subdivided the entire 9.895 acre tract into several lots and thus have computed the density independently, thereby insulating the subject property; but this was not done. This Court further held that Marathon knew, or should have known, that at the time of the purchase, apartments had been built by the sellers and that the land purchased by Marathon had not theretofore been subdivided. Thus, Marathon knew that its land could not be used.

On December 18, 1961, the subject property was conveyed by the appellees, Polinger et al., to Marathon by a deed duly recorded on February 6, 1962, among the Land Records of Montgomery County, the appellees being referred to in the deed as the "parties of the first part" and the deed containing, *inter alia,* the following language:

"And the said parties of the first part hereby covenant that they have not done or suffered to be done any act, matter or thing whatsoever to encumber the property hereby conveyed; that they will warrant specially the property granted and that they will execute such further assurances of the same as may be requisite."

Marathon contends that its inability to use the subject property results from an "encumbrance" thereon in violation of the covenant against encumbrances, while the appellees, who were defendants below, contend that such inability to use the land does not constitute an encumbrance in violation of the covenant.

The trial court in a carefully considered opinion held that there was no violation of the covenant against encumbrances and entered a judgment for costs in favor of the defendants-appellees. From this judgment, Marathon filed a timely appeal. We have concluded that the ruling of the lower court was correct and we will affirm the judgment.

The covenant against encumbrances is one of the *covenants of title* to land currently in frequent use in deeds for conveying land in Maryland. This covenant, like the covenants of seisin and of the right to convey, is a personal covenant which does not run with the land, which operates *in praesenti* and is broken, if at all, when the deed containing the covenant is delivered. Tiffany, *The Law of Real Property* (3rd ed. 1939) ; 21 C.J.S. *Covenants* §§ 40, 41, 42, pp. 911-15.

The covenants of general and special warranty, of quiet enjoyment and for further assurances, on the other hand, are covenants *in futuro* which are not necessarily breached when the deed is delivered but which may be breached by subsequent events. These covenants run with the land. Tiffany, *The Law of Real Property, supra;* 21 C.J.S. *Covenants* §§ 46, 47, 48 and 49, pp. 917-21.

By the Laws of 1864, ch. 252, the General Assembly provided a shorter form for all of these covenants of title so that thereafter conveyancers in Maryland could use the shorter form without the burden of the rather ponderous form in use by the common-law conveyancers who, quite naturally, were unwilling to eliminate a single word of the long form of covenant generally in use and theretofore construed by the courts. The provisions of the Laws of 1864, ch. 252 now appear as Code (1966 Repl. Vol.) Art. 21 "Conveyancing," §§ 86-94.

The General Assembly by providing for the abbreviated form of covenant, however, did not intend either to enlarge or to diminish the meaning and scope of the common law forms. The legislation states that the short form "shall have the same effect" as the old long form. This is reinforced by the provisions of § 9 of ch. 252 of the Laws of 1864 (Art. 21, § 94), as amended, that all deeds executed in pursuance of the prior provisions "shall be as valid and effectual as if the covenants in said deed had been expressed therein, in full."

The Laws of 1864, ch. 252, § 7 (Art. 21, § 92) is the provision relating to covenants against encumbrances. It states, as amended:

"A covenant by grantor, in deed for land, 'that he has done no act to encumber said land,' shall be construed and have the same effect as if he had convenanted that he had not done or executed, or knowingly suffered any act, deed or thing whereby the land and premises conveyed, or intended so to be, or any part thereof, are or will be charged, affected or encumbered in title, estate or otherwise."

The language in the covenant used in the deed involved in the instant case, as we have seen, covenants against the doing or suffering to be done by the grantors of "any Act, matter or thing whatsoever to encumber the property hereby conveyed," so that the full language of the older form of covenant provided for in Art. 21, § 92 is applicable. By virtue of Art. 21, § 86 this covenant binds the grantors, their heirs, devisees and personal representatives and enures to the benefit of the grantee "his heirs, devisees, personal representatives and assigns" — in the present case — Marathon's successors and assigns.

An excellent statement of the Maryland law in regard to covenants against encumbrances appears in the late Judge Eli Frank's book entitled, *Title to Real and Leasehold Estates and Liens* (1912). Judge Frank was a recognized authority on this subject. He stated at page 98:

"The Covenant Against Encumbrances is still frequently used. It has for its object security against those rights to or interest in the property conveyed, which subsist in third persons to the diminution in value of the estate, though consistent with the passing of the fee in the estate. This covenant usually does not run with the land, but is only for the benefit of the covenantee. Its shortened form now reads 'that he (the grantor) has done no act to encumber the land,' but this is the full equivalent of the older form

'that he had not done or executed or knowingly suffered any act, deed or thing whereby the land or premises conveyed, or intended so to be, or any part thereof, are or will be charged, affected or encumbered in title, estate or otherwise.' Code, Art. 21, sec. 74. Even though the grantee has knowledge of the existence of encumbrances at the time of delivery of the deed to him containing a covenant against encumbrances, he is still entitled to the full benefit of the covenant. He is not bound to insist upon the removal of the encumbrances prior to the acceptance of the title, even though the contract of sale bound the vendor to convey a title, free of encumbrances. He may prefer to accept the encumbered title and rely on his action *in personam* against the grantor. *Bryant v. Wilson,* 71 Md. 440, 442, 443."

To the same effect is *Notes on Titles* published by the Title Guarantee Company in 1903, § 56 at page 73, except reference is made to *James v. Jenkins,* 34 Md. 1, 11 (1871) in regard to the purchase of land subject to a visible easement.

It thus appears that the covenant against encumbrances protects the covenantee, its successors and assigns, against rights or interests in the property conveyed which *subsist in third persons* and diminish the value of *the estate* even though they are consistent with the passage of the fee in the estate. Liens, including tax liens, mortgage liens, attachment liens and judgment liens, breach the covenant unless excepted from its operation either expressly or by implication and regardless of whether or not the covenantee knew of their existence. In *Bryant v. Wilson,* 71 Md. 440, 18 A. 916 (1889), Chief Judge Alvey stated for the Court:

"* * * it is quite immaterial that it is not alleged in the bill for specific performance that the property is, to the knowledge of the plain-

tiff, subject to incumbrances; for whether the vendee has knowledge of the existence of incumbrances or not, at the time of taking the deed with covenant against incumbrances, his rights on the covenant would in no manner be affected by such knowledge." (Citing cases and *Washburn on Real Property*.)
(71 Md. at 442-443; 18 A. at 916.)

Easements may be a breach of the covenant against encumbrances, *Wolff v. Woodruff*, 258 Ala. 1, 61 So. 2d 69 (1952) ; *Scriver v. Smith*, 100 N. Y. 471, 3 N. E. 675 (1885) ; 21 C.J.S. *Covenants* § 108 c, p. 967 ; but if the easement is readily apparent upon an inspection of the property, such as a public road in use upon the land, the parties will be deemed to have contracted in reference to it and have adjusted the price for the land accordingly so that the existence of such an easement would not be a violation of the covenant against encumbrances. As our predecessors said in *Janes v. Jenkins, supra*:

> "In *Patterson v. Arthur*, 9 Watts, 154, the question was whether an existing highway was an incumbrance, within the meaning of the covenant against incumbrances on the land sold, and the Court said, 'if there be a public road or highway, open and in use upon it (the land sold) he (the purchaser) must be taken to have seen it, and to have fixed, in his own mind, the price that he was willing to give for the land, with a reference to the road, either making the price less or more as he considered the road to be injurious or advantageous to the occupation and enjoyment of the land;' and it was considered that the covenant did not embrace such an incumbrance."
> (34 Md. at 11.)

Judge Bryan, for the Court, in *Gordon v. McCulloh*, 66 Md. 245, 248-49, 7 A. 457, 458 (1886) indicated that

simple contract debts are not encumbrances on land and stated:

> "The debts alleged to be due to the complainant were merely simple contracts, and in no respect 'incumbrances upon, or claims against' the lands. These expressions import liens, which *proprio vigore* bind the realty; which fasten upon it and follow it into the hands of all purchasers, who take it with notice of their existence; and which may be enforced by a sale of the property. They are called 'incumbrances' because they rest as a burden on the title, until they are removed by payment or release; they are described as 'claims against the land,' because the land is the debtor and may be sold to discharge the debt without regard to the personal liability of the owner. To be sure, all simple contracts may by a due course of successful legal proceedings be reduced to judgments, and judgments are undoubtedly liens on land. But when this change in the character of the indebtedness occurs, the simple contract has no longer a legal existence. It is merged and entirely gone. It has never been held that a debt is to be considered a lien, because it might become such through litigation, if successfully prosecuted."

The weight of authority indicates that zoning and other ordinances and statutes concerned with the use of the land involved do not constitute an encumbrance on the land and their lawful impact upon that use does not result in a breach of the covenant against encumbrances. See *Kazwell v. Reynolds,* 250 Ill. App. 174 (1928); *Fritts v. Gerukos,* 273 N. C. 116, 159 S.E.2d 536 (1968); *Hall v. Risley,* 188 Or. 69, 213 P. 2d 818 (1950); see Comment, *Public Land Use Regulations and Marketability of Title,* 1958 Wisconsin L. Rev. 128. The Court of Appeals of New York in *Lincoln Trust Co. v. Williams Bldg. Corp.,* 229 N. Y. 313, 128 N. E. 209 (1920) held that a

zoning ordinance in force at the time the contract for the sale of the land was entered into was not an encumbrance. Judge McLaughlin, for a unanimous Court, in the *Lincoln Trust Co.* case stated:

"In a great metropolis like New York in which the public health, welfare, convenience and common good are to be considered, I am of the opinion that the resolution [a restriction on the use of the land by the New York City Zoning Ordinance] was not an incumbrance, since it was a proper exercise of the police power. The exercise of such power, within constitutional limitations, depends largely upon the discretion and good judgment of the municipal authorities, with which the courts are reluctant to interfere. The conduct of an individual and the use of his property may be regulated. (*Village of Carthage v. Frederick,* 122 N. Y. 268; *People v. Gillson,* 109 N. Y. 389; *Matter of Jacobs,* 98 N. Y. 98) In the exercise of the police power the uses in a municipality to which property may be put have been limited and also prohibited."

\* \* \*

"The [zoning] resolution in question simply regulates the use of property in the districts affected. It does not discriminate between owners. It is applicable to all alike. Therefore the general and well-nigh universal rule should be applied, viz., that where a person agrees to purchase real estate, which, at the time, is restricted by laws or ordinances, he will be deemed to have entered into the contract subject to the same. He cannot therefore be heard to object to taking the title because of such restrictions. (*Bennett v. Buchan,* 76 N. Y. 386)"

(229 N. Y. at 317 and 318, 128 N. E. at 210.)

Indeed, the Court of Appeals of New York in *Bull v.*

*Burton,* 227 N. Y. 101, 106-07, 124 N. E. 111, 113 (1919) indicated that if there is a restrictive covenant running with the land which prohibits the use of the land for certain purposes or the use of certain building materials in the erection of buildings on the land, such a restrictive covenant does not make the title to the land unmarketable if "the prohibition does not exceed reasonable prohibitions by statute or ordinance." [1]

The Supreme Court of Utah in *Flemetis v. McArthur,* 119 Utah 268, 226 P. 2d 124 (1951) held that rights affected in the land and reserved to the United States by a public law were not an encumbrance upon the land. Justice Latimer stated for that court:

> "The defendants entered into the agreement with notice of their existence. Purchasers of land must take notice of public statutes restricting the use of the granted premises and such restrictions constitute no breach of covenant or warranty. See *Maupin on Marketable Title* 3rd Ed. Sec. 143."
>
> (119 Utah at 272, 226 P. 2d at 126.)

See *Berger v. Weinstein,* 63 Pa. Super. 153 (1916). See also *Mortenson v. Financial Growth, Inc.,* 23 Utah 2d 54, 456 P. 2d 181 (1969) ; *Miller v. Milwaukee Odd Fellows Temple,* 206 Wis. 547, 558, 240 N. W. 193, 198 (1932). *Cf. Brunke v. Pharo,* 3 Wis. 2d 628, 89 N.W.2d 221 (1958), relied on by Marathon, which held that a complaint by a grantee seeking damages for breach of a covenant against encumbrances in a deed alleging existing and imminent prosecution for violations of a building code in regard to an apartment building stated a cause of action, citing *Miller, supra,* but stating that the building code established standards to be met and were not a limitation upon the use of the land, and were not

---

1. Bull v. Burton is reviewed in several "Notes" in law reviews. See 20 Colum. L. Rev. 76, 78-79 (1920) ; 5 Cornell L. Rev. 98 (1919) ; 68 U. of Pa. L. Rev. 75 (1919). See also, G. Braun, *Merchantability of Land Titles as Affected by Restrictive Covenants,* 13 Baylor L. Rev. 337 (1961).

the type of obvious physical conditions which would not, under prior Wisconsin cases, result in a breach of a covenant against encumbrances.

The Supreme Court of Louisiana in *Oatis v. Delcuze,* 226 La. 751, 757, 77 So. 2d 28, 30 (1954), also relied on by Marathon, indicated that the "mere existence of the zoning regulations . . . does not of itself create an encumbrance on the title to the property," but was of the opinion that an existing violation of the ordinance would be such an encumbrance. But see, *Stone v. Sexsmith,* 28 Wash. 2d 947, 184 P. 2d 567 (1947) holding that an existing violation of an ordinance establishing electrical standards by defective wiring was no breach of a covenant against encumbrances. See also, *Gaier v. Berkow,* 90 N. J. Super. 377, 217 A. 2d 642 (1966).

Maryland's own Professor Tiffany in his *The Law of Real Property* (3rd ed. 1939) states in vol. 4, § 1005, pp. 139-140:

> "A covenant as to the use of land, or a restriction upon its use, whether enforceable at law or in equity, is a breach of the covenant against incumbrances, unless it is merely expressive of the restrictions already imposed by law, or unless it is of a personal character and not running with the land."
>
> * * *
>
> "Restrictive laws or ordinances do not constitute incumbrance."

It may readily be seen from these cases and texts that zoning laws and ordinances are deemed part of the contract of sale of the land and that the parties necessarily contract and adjust the price for the land in the light of such laws and ordinances. Zoning laws are imposed pursuant to the police power by the exercise of the legislative power of the state and of its municipalities by delegation of the zoning power and not by the grantor or his predecessors in title. *County Commissioners of Queen Anne's County v. Miles,* 246 Md. 355, 364, 228 A. 2d 450,

454 (1967) and cases therein cited. They do not affect the *title, vel non,* to the land. They are not liens upon the land. They apply uniformly to the land in the zoning district and must not be discriminatory. *County Commissioners of Queen Anne's County v. Miles, supra.* (246 Md. at 374, 228 A. 2d at 460.) They are not rights held by *third persons* which diminish the value of the *estate* in the land. Indeed, the property owners whose land is affected by the zoning ordinance have no vested right to have the zoning classification continue. *Mandel v. Board of County Commissioners of Howard County,* 238 Md. 208, 215-17, 208 A. 2d 710, 714-15 (1965), and cases therein cited. As Judge Delaplaine aptly stated, for the Court, in *Offutt v. Board of Zoning Appeals of Baltimore County,* 204 Md. 551, 561-62, 105 A. 2d 219, 224 (1954) :

> "* * * property owners have no vested rights in consequence of the enactment of a zoning ordinance establishing use districts. No contractual relations are created thereby. Property is held subject to the valid exercise of the police power of the State."

Hence, they do not constitute encumbrances upon the land and no breach of the covenant in the deed against encumbrances occurs.

Marathon places substantial reliance on the decision of the Supreme Court of New York, Special Term, Bronx County, Part I, in *Bronen v. Marmer,* 206 N.Y.S.2d 909 (1960) in which that court held that a complaint alleging that the subdivision of the land making a building on the land conveyed not usable because of the impact of the zoning laws stated a cause of action for breach of the covenant in the deed against encumbrances. The court relied upon a decision by the Surrogate's Court of New York in *In Re Smith's Estate,* 65 N.Y.S.2d 457 (1946) but did not find *Bull v. Burton, supra,* relied upon by the demurring defendant, to be in point. Alas, in our opinion, *In Re Smith's Estate* was not in point as it involved

a restrictive covenant running with the land, whereas the *dictum* of the Court of Appeals of New York in *Bull v. Burton,* which we have already cited, should have been quite persuasive to the Special Term. In any event, *Bronen v. Marmer* appears to us to be inconsistent with the prior holding of the Court of Appeals of New York in *Lincoln Trust Co. v. Williams Bldg. Co., supra.* We do not find *Bronen v. Marmer* to be persuasive.

Marathon not only was charged with constructive notice of the applicable zoning and subdivision laws and ordinances but had *actual knowledge* of them and of their effect upon the use of the subject property prior to executing the contract of sale and accepting delivery of the deed to the subject property. It is deemed to have contracted with due regard to the effect of the applicable laws and ordinances.

We hold that there was no breach of the covenant against encumbrances.

*Judgment affirmed, the costs*
*to be paid by the appellant.*