540 A.2d 1139

**BOARD OF COUNTY COMMISSIONERS OF
CALVERT COUNTY, Md. et al.**

v.

**Denzil PRITCHARD et ux.**

**No. 114, Sept. Term, 1987.**

Court of Appeals of Maryland.

May 9, 1988.

Mary M. Krug and Allen S. Handen (Handen and Singerman, on brief), Prince Frederick, for appellant.

Gary A. Goldstein (Charles E. Haller, on brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

RODOWSKY, Judge.

In this case owners whose land was downzoned before they acquired any vested rights in the prior zoning classification argue that the downzoning violates procedural due process. The argument succeeded in the Court of Special Appeals but, as hereinafter explained, does not succeed here.

Respondents, Denzil and Elizabeth Pritchard (the Pritchards), own a tract of 21.569 acres in the northeast quadrant of the intersection of Maryland Route 4 and Brickhouse Road in the Third District of Calvert County (the Site). On May 8, 1984, a comprehensive rezoning of Calvert County was adopted, effective May 9, 1984, at which time new countywide zoning maps and the text of a new Calvert County Zoning Ordinance (Ord.) became legally operative. *See* Ord. §§ 1–2, 2–1 and 7–8. Under the 1984 rezoning the Site was classified rural commercial, a district "created to provide a zoning classification for existing commercial enterprises located outside Town Centers and Marine Commercial Districts at the time of the 1984 Comprehensive

Rezoning." Ord. § 3–1.05.[1] Commercial retail uses are permitted uses in the rural commercial zone. Ord. § 3–2.03.

On May 8, 1984, the Site was undeveloped.[2] With respect to undeveloped property zoned rural commercial on the date of adoption of the comprehensive rezoning Ord. § 7–4.02 B provides:

> Undeveloped Rural Commercial properties outside Town Centers as identified on the Zoning Maps will be allowed to retain commercial zoning for a period of two years from the adoption of this Ordinance. At that time, those properties with an approved site plan will have an additional two years to complete substantial construction of their buildings. Those properties without an approved site plan shall be automatically zoned consistent with the zoning in the area after the first two year period. Those properties with approved site plans which have not completed substantial construction of their principal buildings within the additional two year period referred to above, shall be automatically zoned consistent with the zoning in the area. Only those portions of properties which can

---

1. Section 3–1.05 further provides in relevant part:
   Additional Rural Commercial zoning will be considered comprehensively at least every four years and will be based on a comprehensive evaluation of the need for and appropriateness of additional commercial zoning outside Town Centers and Marine Commercial Districts. In order to help ensure highway traffic safety and to promote the public welfare, additional Rural Commercial Zoning shall not be approved on a parcel of land which adjoins a minor arterial or which requires direct access onto a minor arterial.

2. On April 18, 1984, the Calvert County Planning Commission had approved a plan for a convenience food store on the property on the condition that the only access be to Brickhouse Road. The Pritchards, aggrieved by the condition, appealed to the circuit court and "also sought to enjoin the enactment of [the 1984] zoning ordinance because its site plan review procedure expressly authorized the denial of access to Route 4, thereby rendering the appeal moot." Pritchard v. Calvert County Planning Comm'n, Court of Special Appeals of Maryland, No. 136, September Term, 1985, filed October 15, 1985 (unreported). The circuit court denied the injunction and affirmed the agency. The Court of Special Appeals affirmed the circuit court. *Id.*

demonstrate substantial construction of their principal buildings within the additional two year period shall retain commercial zoning. Any residue shall be zoned consistent with the zoning in the area.

On August 2, 1985, a contract purchaser from the Pritchards, Compson Development Company (Compson), caused to be submitted to the Calvert County Planning Commission (the Commission) a preliminary subdivision plan which proposed a shopping center on the Site. The Commission granted preliminary approval of the plan at its regular meeting on October 16, 1985, subject to conditions. One of the conditions permitted access only to Brickhouse Road. The Commission's secretary notified Compson of the preliminary approval and of the specific conditions by letter dated November 1, 1985. There was no appeal from this action of the Commission.[3]

On May 7, 1986, when two years from the effective date of the 1984 ordinance had nearly expired, the Pritchards, acting in their own names, submitted for review plans under which the Site would be utilized as a shopping center. The plans were identical to those for the shopping center previously proposed by Compson. At a regular meeting held on May 21, 1986, the Commission unanimously disapproved those plans because the property "was rezoned from Rural Commercial to Rural on 5/8/86" so that the site plan

---

3. On November 12, 1985, Compson submitted a sketch plan to the Commission reflecting access only to Brickhouse Road. The Commission, by letter to Compson dated December 20, 1985, pointed out that it was "not the Planning Commission's normal procedure to take official action on Sketch Plans and no Site Plan ha[d] been submitted." Because of Compson's "specific request for action upon the Sketch Plan as submitted," the Commission at a meeting on December 4, 1985, disapproved the sketch plan for two reasons. First, it called for a traffic light at the intersection of Route 4 and Brickhouse Road which was not consistent with the comprehensive plan. Second, the septic field serving the shopping center was required to be located within the boundaries of the commercial zone but the sketch showed the septic field on adjacent, noncommercially zoned land. Thereafter Compson's involvement with the Site seems to have ended.

was "not consistent with the proper zoning." [4]

The Pritchards appealed to the circuit court which affirmed the Commission. That court reasoned that once the two-year period under Ord. § 7–4.02 B expired the property was no longer in a district which permitted the shopping center use proposed on the site plan.

The Pritchards appealed to the Court of Special Appeals which reversed in an unreported opinion. The court recognized that the intent of § 7–4.02 B was to adopt a "use it or lose it" rationale but thought that the procedural steps were unclear, saying:

> The language used in § 7–4.02 B is ambiguous in that it does not specifically address or define the effect on the automatic rezoning provision of the timely submission of a site plan application; it does not answer the question whether the automatic rezoning will occur immediately upon the expiration of the period notwithstanding that prior to that time an application for site plan approval had been filed.

The court considered *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) to be a relevant precedent. That decision held that due process required a hearing on a claim under an Illinois antidiscrimination statute which provided a statutory entitlement to certain remedies. In the case at hand the Court of Special Appeals, although conceding "that no property rights exist in zoning absent vested rights," said

> that such rights may be bestowed upon a property owner in the zoning ordinance itself and, once bestowed, constitutionally may not be removed without appropriate proce-

---

**4.** It is immaterial in this case whether "two years from the adoption [on May 8, 1984]," expired on May 8, 1986, as the Commission stated, or on May 9, 1986, by computing time in the same manner as that prescribed in Md. Code (1957, 1985 Repl.Vol.), Art. 94, § 2. For the sake of consistency with the Commission, we shall utilize May 8, 1986.

Further, no issue has been raised in the case now before us concerning the Commission's conclusion that a reclassification to rural was "consistent with the zoning in the area after the first two year period."

dural safeguards. This is precisely the situation *sub judice.* By virtue of § 7-4.02 B, [the Pritchards] were given an entitlement, for a two-year grace period, in the rural-commercial zoning of their property. That entitlement could be continued and, in fact, was guaranteed upon their obtaining of an approved site plan. That entitlement may not be extinguished without adequate and appropriate safeguards. [Citations omitted.]

The court then concluded that the entitlement could not automatically be terminated without a hearing, particularly when the Pritchards faced the "impossible" burden of being required "to speculate" when an application must be filed so as to allow sufficient time for the Commission to act.

We granted Calvert County's petition for certiorari.[5]

I

■ The Pritchards present here, as they did in the intermediate appellate court, a ground of decision which does not require deciding whether their due process rights were violated by the Commission. They submit that, as a matter of statutory construction, one complies with § 7-4.02 B by submitting a site plan in "approvable" form within two years from May 8, 1984, without regard to when the plan is approved. The text simply does not permit that interpretation. After providing that undeveloped rural commercial properties outside town centers "will be allowed to retain commercial zoning for a period of two years from" May 8, 1984, the ordinance reads that "[a]t that time, those properties with an approved site plan will have an additional

---

5. The Pritchards had also filed, on April 22, 1986, a complaint for a mandamus ordering the Commission to approve a site plan attached as exhibit 1 to that complaint. That site plan exhibit called for access to Route 4. The circuit court entered judgment for the defendants in the mandamus action. The Pritchards appealed to the Court of Special Appeals from the denial of mandamus and that appeal was consolidated with their appeal from the Commission's disapproval of the site plan submitted on May 7, 1986. The Court of Special Appeals affirmed the circuit court's denial of mandamus and we denied the Pritchards' petition for certiorari from that affirmance.

two years to complete substantial construction of their buildings." The phrase, "[a]t that time," refers to the time when the two years expire. A site plan which meets the condition is one which is "approved" at that time. The last day of the two-year period is the last day by which the condition must be satisfied, not the beginning of a period of site plan review during which rural commercial zoning continues.

In addition, the argument that "approvable" should be, in effect, substituted for "approved" is of no ultimate benefit to the Pritchards unless "approvable" is taken to mean "approvable" *in some form into which the site plan might evolve from the form in which it was submitted on the day before the end of the two-year period.* This is because the site plan actually submitted by the Pritchards was identical to a plan previously submitted by Compson which the Commission would not unconditionally approve. It is not the purpose of the two-year provision in the ordinance to mark the beginning of a period of negotiation over the features of the project.

When § 7-4.02 B is viewed in the light of prior Maryland downzoning cases, it is clear that the two-year provision is a matter of legislative grace. "[I]n order to obtain a vested zoning status, there must be construction on the ground[.]" *Washington Suburban Sanitary Comm'n v. TKU Assocs.,* 281 Md. 1, 23, 376 A.2d 505, 516 (1977). Thus, we have sustained zoning amendments which prevented or substantially altered a project when, prior to construction but in anticipation of the continuation of the prior zoning, an owner: expended $1,500,000 and dedicated $800,000 worth of land in planning a 900,340 square foot retail and office complex, *id.;* expended nearly $260,000 on plans for a refinery and obtained a building permit, *Steuart Petroleum Co. v. Board of County Comm'rs,* 276 Md. 435, 347 A.2d 854 (1975); expended $1 million in planning an apartment development and obtained a building permit for 420 units, *County Council for Montgomery Co. v. District Land Corp.,* 274 Md. 691, 337 A.2d 712 (1975); and obtained from

a board of appeals, pursuant to an adjudication by this Court, a special exception for a concrete batching plant followed by preliminary approval of a site plan, *Rockville Fuel & Feed Co. v. City of Gaithersburg,* 266 Md. 117, 291 A.2d 672 (1972). *See also Richmond Corp. v. Board of County Comm'rs,* 254 Md. 244, 255 A.2d 398 (1969); *Marathon Bldrs., Inc. v. Montgomery County Planning Bd. of the Maryland–National Capital Park & Planning Comm'n,* 246 Md. 187, 227 A.2d 755 (1967); *Bogley v. Barber,* 194 Md. 632, 72 A.2d 17 (1950); *Mayor & City Council of Baltimore v. Shapiro,* 187 Md. 623, 51 A.2d 273 (1947). Under the principle established by these cases the County Commissioners of Calvert County could have placed the Site in a rural zone, effective as of May 8, 1984, despite plans the Pritchards, or one claiming under them, might have had for a shopping center at the Site.

Instead, the County Commissioners enacted a saving clause for properties zoned rural commercial which were undeveloped as of May 8, 1984. Owners of that class of land were given two years within which to obtain an approved site plan and an additional two years within which to complete substantial construction of their principal buildings. The legislative body concluded that two years was a reasonable period within which to prepare, submit and obtain approval of the site plan for any size project utilizing rural commercial zoning. Indeed, the validity of that legislative conclusion is demonstrated by Compson's experience in obtaining the response of the Commission within several months after Compson's submission. Unlike the Court of Special Appeals, we do not discern an ambiguity in § 7–4.02 B arising from its lack of express provisions dealing with the effect on the automatic reclassification of a pending but unapproved site plan as of May 8, 1986. Under the subject ordinance the initial benefit of the saving clause is achieved only by site plan approval and the ordinance is not concerned with the effect of site plan submissions, as such.

Consequently, absent a site plan approved within two years from May 8, 1984, § 7–4.02 B of the ordinance operat-

ed to reclassify the Site into a rural zone. The question then becomes whether constitutional arguments advanced by the Pritchards, particularly procedural due process, prevent the ordinance from having that operation and effect.

## II

### A

■ There is no procedural due process violation. The hearing which the Court of Special Appeals considered to have been denied to the Pritchards was a hearing before the Commission on the site plan submitted May 7, 1986. Underlying that analysis is the concept that the submission stayed the automatic rezoning so that the site plan should have been considered under the rural commercial zoning. The Court of Special Appeals seems to consider that result constitutionally required in order to cure the ordinance's vagueness as to a deadline for submission of the site plan, although that court did not articulate its reasoning in those terms.

The Supreme Court stated the guidelines governing a facial challenge on due process grounds to claimed vagueness of a statute in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Under attack in that case was a municipal ordinance which required, under penalty of criminal fines, licensing of, and recordkeeping by, persons selling " 'any items, effect, paraphernalia, accessory or thing which is designed or marketed for use with illegal cannabis or drugs[.]' " *Id.* at 492, 102 S.Ct. at 1190. In that context the Court said:

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expect-

ed to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. [*Id.* at 498, 102 S.Ct. at 1193 (footnotes omitted).]

In the case now before us the Pritchards were on notice on May 8, 1984, that their property would be downzoned in two years absent an approved site plan. The ordinance identifies the reviewing agencies which must approve a site plan before a building permit will be issued.[6] Because the size and complexity of a specific project will affect the length of time required for agency review, prudence dictates that one who owned undeveloped rural commercial land as of May 8, 1984, would inquire of the appropriate Calvert County officials as to how far in advance of the automatic downzoning a site plan for a specific type of project should be submitted in order to obtain approval within the two-year period. Due process does not require greater specificity as to the timing of an application than that provided in § 7–4.02 B.

The Court of Special Appeals considered that the grace period provided by the saving clause was in some way extended by the Pritchards' last minute filing, and considered that the function of the Commission was to review the tendered site plan for conformity with rural commercial zoning. Thus, the court concluded that this case was con-

---

**6.** An applicant submits a completed application form, the appropriate fee and the site plan to the Division of Inspections and Permits. Ord. § 6–1.04 A. The Chief of Inspections and Permits refers the permit to the appropriate agencies for review. § 6–1.04 C. Pursuant to § 6–1.05 the following agencies review plans:

    A. Division of Inspections & Permits;
    B. Department of Planning & Zoning;
    C. Planning Commission, which reviews for conformity with, *inter alia,* the zoning ordinance;
    D. Engineering Division;
    E. Soil Conservation Service;
    F. County Health Department;
    G. State Fire Marshall;
    H. County Water & Sewer Division; and
    I. State Highway Administration.

trolled by principles involving procedural due process as applied to the deprivation of statutory entitlements. We do not agree. Assuming that the saving clause had conferred a statutory entitlement on the Pritchards, that entitlement was lost by the terms of the ordinance two years after May 8, 1984, and was not extended by the filing on May 7, 1986. When the Commission reviewed the Pritchards' site plan at its regular meeting on May 21, 1986, the downzoning had taken effect and the Commission could not approve a site plan for a shopping center in a rural use district.

In this respect the case at hand is like *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) where a university decided, for unstated reasons, not to renew on its expiration the one-year contract of a teacher who needed three more years to be eligible for tenure. Reversing lower court holdings that the teacher had been denied procedural due process the Court held that the teacher's "property" interest in employment at the university

> was created and defined by the terms of his appointment. Those terms secured his interest in employment up to June 30, 1969. But the important fact in this case is that they specifically provided that the [teacher's] employment was to terminate on June 30. [*Id.* at 578, 92 S.Ct. at 2709.]

The Court held that under those circumstances the teacher "did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." *Id.* at 578, 92 S.Ct. at 2710.

Consequently, *Logan v. Zimmerman Brush Co., supra,* is not on point. The Illinois anti-discrimination statute involved in that case placed an obligation on the agency administering the statute to convene a fact-finding conference within 120 days after a charge of discrimination was made by a complainant. The agency, apparently by oversight, scheduled the hearing on Logan's complaint for a date five days after expiration of the statutory period. 455

U.S. at 426, 102 S.Ct. at 1152. The Supreme Court of Illinois held that the failure to conduct the hearing within the statutory period terminated the claim. The United States Supreme Court found a denial of procedural due process. The Illinois statute conferred on Logan a state-created right to redress discrimination. Whether Logan would obtain redress under that statute depended upon whether he was unable to perform his duties as a shipping clerk or whether he was discriminated against because one of his legs was shorter than the other. The Court held that Logan's claim under the statute was a form of property of which he could not be finally deprived without " *'some* form of hearing.'" *Id.* at 433, 102 S.Ct. at 1156 (quoting *Board of Regents v. Roth, supra,* 408 U.S. at 570–71 n.8, 92 S.Ct. at 2704–05 n.8). Applying a standard under which "the timing and nature of the required hearing 'will depend on appropriate accommodation of the competing interests involved,'" 455 U.S. at 434, 102 S.Ct. at 1157 (footnote omitted) (quoting *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738–39, 42 L.Ed.2d 725, 737 (1975)), the Court concluded that the Illinois statute presented "an unjustifiably high risk that meritorious claims will be terminated" and that "the State's interest in refusing Logan's procedural request is, on this record, insubstantial." 455 U.S. at 435, 102 S.Ct. at 1157.

*Logan* was concerned with a hearing at which the agency, acting in a quasi-judicial capacity, would have determined adjudicative facts.

> Professor Davis says that adjudicative facts are facts about the parties and their activities, businesses and properties. They usually answer the questions "of who did what, where, when, how, why, with what motive or intent" while legislative facts "do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion." [*Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 712, 376 A.2d 483, 497 (1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 769

(1978) (quoting 1 Davis, *Administrative Law Treatise* § 7.02 (1958)).]

Here, unlike the problem in *Logan,* the Pritchards' property was not downzoned as a result of any determination of adjudicative facts by the Commission. The downzoning was legislative action embodied in the ordinance of May 8, 1984, with the downzoning delayed for the two-year grace period. In *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), the owner of property which had been reclassified by the town council to permit a high-rise apartment lost the rezoning in a municipal referendum called for by the town charter. The owner claimed that the referendum effected a standardless delegation of legislative power, but the Court held that the citizens of the municipality acted legislatively in exercising a power reserved by the people to themselves. 426 U.S. at 672, 96 S.Ct. at 2361. The Court further stated:

> If [the owner] considers the referendum result itself to be unreasonable, the zoning restriction is open to challenge in state court, where the scope of the state remedy available to [the owner] would be determined as a matter of state law, as well as under Fourteenth Amendment standards. That being so, nothing more is required by the Constitution. [*Id.* at 677, 96 S.Ct. at 2363–64 (footnote omitted).]

The only finding made by the Commission in the case before us was that the site plan proposed a shopping center on property in a rural zone which does not permit that use. The Commission essentially reached a legal conclusion on undisputed facts. Any due process requirement for judicial review of that legal conclusion is more than satisfied by the appeal to the Circuit Court for Calvert County, followed by appeal as of right to the Court of Special Appeals, and by the discretionary review by this Court.

## B

■ The Pritchards additionally argue that the downzoning violates their equal protection rights. They rely, once

again, on *Logan v. Zimmerman Brush Co., supra,* but, for the instant argument, on the positions espoused by six justices in two concurring opinions. Those justices believed that the Illinois anti-discrimination statute created two classes of claimants, those whose claims were processed by the agency within the 120–day time limit and those whose claims were not timely processed. The six justices concluded that there was no reasonable basis for this classification because it depended wholly on a factor beyond the control of the claimant.

The County Commissioners of Calvert County in implementing the saving clause made site plan approval the criterion for qualifying for continued rural commercial zoning and fixed two years as the period within which that qualification must be attained. Unlike *Logan,* whether a property owner satisfies the criterion by the time limit is a matter over which the property owner can exercise control, where, as here, there is no question as to the good faith of the administrative review. Those who submit their site plans for review early in the two-year grace period enjoy a greater likelihood that the process will be completed and any approval granted than do those who delay until late in the process or who, as did the Pritchards, delay until the last moment. "It is evident from the circumstances of this case that approval of a site plan was impossible on May 7[, 1986]." Respondents' Brief at 16. Rewarding diligence bears a reasonable relation to the saving provision's objective of striking a balance between the economic hopes or expectations of property owners and achieving the comprehensive plan's goal of reducing commercial uses outside of town centers.

## C

■ Finally, the Pritchards contend that the downzoning violated the State Enabling Act, specifically, Md. Code (1957, 1988 Repl.Vol.), Art. 66B, § 4.05(a). In relevant part it provides:

Such regulations, restrictions, and boundaries may from time to time be amended, supplanted, modified, or re-

pealed. Where the purpose and effect of the proposed amendment is to change the zoning classification, the local legislative body shall make findings of fact in each specific case ... and may grant the amendment based upon a finding that there was a substantial change in the character of the neighborhood where the property is located or that there was a mistake in the existing zoning classification.

The automatic downzoning at the end of the grace period of undeveloped rural commercial property for which a site plan had not been approved was part of the comprehensive 1984 rezoning of Calvert County. "The so-called 'change or mistake' rule applicable to piecemeal zoning cases is not controlling in comprehensive zoning cases, and the plan is entitled to the same presumption of correctness as an original zoning." *Scull v. Coleman,* 251 Md. 6, 12, 246 A.2d 223, 226 (1968). And *see Montgomery County v. Woodward & Lothrop, Inc., supra,* 280 Md. at 703 n. 8, 376 A.2d at 493 n. 8.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY. COSTS TO BE PAID BY THE RESPONDENTS.