## TRI-STATE PROPERTIES, INC. *v.* MIDDLEMAN ET AL., ETC.

[No. 205, September Term, 1964.]

42

*Decided March 8, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, SYBERT and BARNES, JJ.

*Kenneth E. Pruden,* with whom were *George T. Burroughs* and *Marion E. West* on the brief, for the appellant.

*Cary M. Euwer,* with whom were *Ernest N. Cory, Jr., Richard C. Rice, Mitchell, Clagett & Euwer,* and *Cory, Boss & Rice* on the brief, for the appellees.

PRESCOTT, C. J., delivered the opinion of the Court.

Being dissatisfied when the Circuit Court for Prince George's County (Powers, J.) granted appellee's motion for a summary judgment and dismissed its amended bill for specific perfor-

mance of a contract for the purchase of real property, appellant has appealed.

The appellant contends that the trial court erred in two ways: (1) the court failed to construe the provisions of the contract correctly; and (2) there was a genuine dispute as to material facts; hence there should have been a trial upon the merits of the case. Maryland Rule 610 d.

On October 24, 1961, appellant and appellees entered into a contract for the sale of some 15 acres of land by the appellees to the appellant for $187,500. The contract is of normal length for one of this nature, but, for the purposes of this appeal, it is necessary to set forth but brief portions thereof. They follow:

> "This contract is subject to the Seller obtaining, at Seller's cost and expense, zoning on subject property, *either to R-18 zoning from Prince George's County or its nearest approximate equivalent from annexation into the town of Laurel, Maryland, but in no event a zoning to permit less than 300 apartment units.* If Seller has not obtained said rezoning within nine (9) months from date of acceptance of this contract by Seller, then Purchaser shall have the right to attempt to secure said rezoning at Seller's expense. If such zoning is not so obtained within one (1) year from date of acceptance of this contract by Seller, the Purchaser may thereafter cancel this contract by written notice or settle on property as is within thirty days after the expiration of one (1) year after acceptance of this contract by Seller."
>
> * * *
>
> *"SETTLEMENT.* Time is of the essence of this contract and within 60 days after zoning has been obtained and appeal period has expired but no sooner than March 15, 1962, * * * seller and purchaser are required and agree to make full settlement * * *."
>
> * * *
>
> *"TITLE.* The property is sold free of encumbrance except as aforesaid; title is to be good of record and

in fact and merchantable; the property covered by this contract shall be subject to no covenants or restrictions, recorded or unrecorded *as could in any manner whatsoever affect or interfere with the development and/or use of the same under applicable zoning and building regulations except* customary rights of way for utilities and utilities installations; otherwise the deposit is to be returned and sale declared off at the option of the purchaser, * * *." (Emphasis supplied.)

The sellers made prompt application for the zoning called for in the contract, but were unable to obtain the same within either the nine months' period, or the year. The purchaser did not obtain the zoning within the year, and no notice was given by the purchaser, oral or written, of either the termination of the contract or its determination to accept the property "as is," within 30 days thereafter.

Before the year had expired, an action was filed by the Maryland-National Capital Park and Planning Commission against the City of Laurel and one of the owners (a defendant in the case at bar) relative to the property that is the subject matter of the present proceeding. The suit, in no manner, involved the *title* to said property, but involved a dispute between the two corporate agencies as to which had jurisdiction over the property with respect to its zoning.

After the expiration of the 13 months' period, on January 16, 1963, Mr. Isen, the President of the purchaser, wrote one of the owners a letter which contained the following pertinent excerpts:

"We are prepared to make settlement under this contract *subject to compliance with all of the conditions thereof, including, without limitation, the zoning of the property as called for under the contract.*"

* * *

"We understand that you are following up the matter of the pending equity suit * * * [the one mentioned above]. Please let use know when this suit is finally disposed of *and the zoning is permitted to stand for apartment use.*" (Italics ours.)

It will be noted that this letter was written some 50 days after the termination of the 13 months' period, but no mention is made, even at this time, that the purchaser had any intention of completing the contract on an "as is" basis, but, on the contrary, clearly indicated that it was interested in consummating the purchase if, and when, zoning were obtained.

Nothing in the evidence shows that there was any further correspondence between the parties until September 16, 1963, when Isen again wrote one of the owners a letter, stating, among other things, the following:

> "It is my understanding from our last conversation regarding the contract between us of October 23, 1961, involving the fifteen acres of land * * * that you propose to reapply for apartment house zoning in the near future.
>
> "In order that I can better determine when I will be required to arrange the necessary financing for the purchase of the property * * *; it would be greatly appreciated if you could let me know when you propose to file for the zoning and approximately how long it would take for final disposition of the request."

The owner answered by a letter to Isen on September 23, 1963 saying:

> "I hereby advise you that your contract is null and void since the property is no longer zoned and the time limit has expired. You have our permission to request the return of your deposit."

The institution of this action followed on November 8, 1963.

The trial judge concluded that under a proper construction of the contract, with time being of the essence, the purchaser had the right, after zoning was not obtained in one year, either to cancel the contract or call for settlement on an "as is" basis, within 30 days after the expiration of the one year. He further concluded that the equity suit "was not a defect in the title which would permit the purchaser to delay settlement," and keep the contract on foot indefinitely, as the suit did not involve, under the circumstances, "title to the real estate." We agree.

It is clear to us that a proper reading of the pertinent provisions of the contract, as set forth above, discloses that the purchaser purchased the subject property, at the named price, provided certain zoning were obtained therefor within one year; and, if the desired zoning were not procured within the year, the purchaser had the further right to accept the property on an "as is" basis or cancel the contract at anytime within 30 days thereafter. But this it did not do. We find as late as September 16, 1963, the purchaser writing to the seller and still basing a settlement for the property on the contingency of zoning. In fact, the first intimation that appellant gave that it was willing to settle on an "as is" basis was "shortly before the filing of this suit." The purchaser had no right to wait, after the 13 months, until the litigation to determine which public authority had a right to zone the property ended, and then decide to take the property "as is."

The contention of the purchaser that the equity suit affected "title" to the property, so as to make it unnecessary for the purchaser to cancel the contract or settle within its terms is not sustainable. We shall not elaborate upon the possibility of whether or not a zoning ordinance or regulation, generally, may be considered an encumbrance on the title of property (compare 3 *American Law of Property,* Section 11.49 and 55 Am. Jur., *Vendor and Purchaser,* § 250), for the terms of the contract plainly show that the purchaser was interested in a particular classification of zoning for the property. If that zoning were obtained within a specified time, it was required to take the property; if the zoning were not obtained within that time, the purchaser still had additional time, within which to purchase, whatever the zoning might be, or to cancel the contract. With these plain, specific and well-defined provisions relative to zoning and the rights of the parties, if zoning were procured or if zoning were not procured, it is difficult to discern how a suit to determine which of two agencies had the right to zone the property, should have any effect on the contract whatsoever, much less be an "encumbrance" on the property.

We hold that the trial judge gave the contract its proper construction, and the equity action, under the facts of this case, did not constitute an encumbrance upon the title of the property involved.

Appellant's claim that there was a genuine dispute as to material facts does not require elaborate discussion. It filed an "Affidavit In Opposition to Motion for Summary Judgment" and a "Motion" in opposition thereto. They contend that the pleadings showed that disputed material facts were involved. However, a careful reading thereof fails to bear out this contention. Appellant repeats several times therein that it was ready, able and willing to settle for the property "according to the terms and conditions contained therein [the contract]." But these assertions are all based upon the false premise, as we have held above, that the sellers could not convey a marketable title to the property until the equity suit is disposed of. We find no genuine dispute as to material facts in these allegations.

Appellant further claims its allegations that "defendant waived strict performance by the plaintiff," and "is thus estopped from denying the plaintiff the privilege of carrying out the contract" showed a dispute as to material facts. These allegations are no more than conclusions of law. Under summary judgment procedure "general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment," for the "supporting and opposing affidavits must submit evidentiary facts to the Court." *Frush v. Brooks,* 204 Md. 315. See also *Strickler Engineering Co. v. Seminar Inc.,* 210 Md. 93; *Evans v. Johns Hopkins Univ.,* 224 Md. 234. If this were not so, the real and crucial purposes of summary judgment procedure—to avoid delays and unnecessary costs—would be subverted and thwarted, for if one could simply make a general denial or a bald statement that material facts were in dispute, without the actual statement of such evidentiary facts, there would be few, if any, summary judgments granted. We hold the above allegations failed to disclose a genuine dispute of material facts.

The record discloses that the real estate broker, the agent of the sellers, held the down payment in accordance with the provisions of the contract. The letter of September 23, 1963, authorized its return to the purchaser. Appellant suggests that the failure to order the return of the deposit estopped the appellees from not consummating the contract. We hold that this, alone, did not create such an estoppel.

*Judgment affirmed, with costs.*