649 A.2d 1157

Robert M. DILLOW

v.

James S. MAGRAW, et ux.

No. 139, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Nov. 30, 1994.

344

346

348

350

Robert F. Kahoe, Jr., Bel Air, for appellant.

C. Thomas Brown (Albright & Brown, on the brief), Balti-more, for appellees.

Argued before GARRITY *, ALPERT and HOLLANDER, JJ.

ALPERT, Judge.

This appeal presents the novel issue of whether failure to name the proper parties in a proceeding to foreclose equity of redemption renders title to that property defective and consti-tutes a breach of special warranty or breach of the covenant against encumbrances when the property is subsequently con-veyed.

Appellant in this case, Robert M. Dillow (Dillow), is a builder of single-family homes in Cecil County, Maryland. In the summer of 1988, he entered into a contract of sale with appellees, James S. Magraw and Deborah L. Magraw (the Magraws), for the purchase of four adjoining, unimproved lots of property located in Cecil County. The property was con-veyed by two separate deeds, dated August 2, 1988 and November 7, 1988. Both deeds contained 1) a special warran-ty; 2) a covenant by the Magraws that "they have done not or suffered to be done any act, matter or thing whatsoever, to encumber the property hereby conveyed"; and 3) a covenant that "they will execute such further assurances of the same as may be requisite."

---

* Garrity, J., participated in the argument and decision in this case but retired from the court prior to the filing of the opinion.

Dillow alleges that after purchasing the property he invested approximately $150,000 to construct three single-family homes on the lots. In early 1989, Dillow attempted to secure a loan for an additional $100,000 in order to complete construction on the homes, but was denied financing because it was learned for the first time that the Magraws did not have good title to the entire property that was conveyed. Dillow learned that the Magraws had originally owned only a five-sixths interest in the property and had apparently purchased the entire property at tax sale in 1983, thus acquiring the remaining one-sixth interest. This one-sixth interest, Dillow alleges, was owned by the heirs of Helen Rowland Squire, who died on January 12, 1947, without a will. On October 31, 1983, the Magraws filed a Bill of Complaint to Foreclose Equity of Redemption (Foreclosure Complaint) with respect to "the subject property." The Circuit Court for Cecil County, sitting in equity, issued a decree on August 28, 1984, granting the Magraws fee simple title to the property.

Dillow alleges that the foreclosure proceeding initiated by the Magraws with respect to the one-sixth portion of the property was not performed in compliance with the Tax–Property Article because it failed to name as defendants the heirs of Helen Rowland Squire. Dillow contends a search of the Orphan's Court records for Cecil County would have revealed that Ms. Squire left six heirs who, by virtue of Ms. Squire's intestacy death, were the record title holders of the property at the time of the tax sale.[1] None of these heirs were named in the Foreclosure Complaint, nor were they notified of the foreclosure proceeding, according to Dillow. Dillow claims that, as a result, he has less than absolute title in the property; that title in the property is not merchantable; and that the property is presently encumbered. He alleges that he has been unable to refinance or sell the property and has sustained damages including expenses incurred in improv-

---

1. As will be discussed, the implication of this alleged failure on the part of the Magraws is that the heirs were not provided an opportunity to pay the back taxes and redeem the property.

ing the property, lost profits, the amount of the purchase price, and other expenses.

In December 1991, Dillow filed a complaint in the Circuit Court for Cecil County against the Magraws as well as against the companies that performed a title search of the subject property, Industrial Valley Title Insurance Company and Fidelity Title Company, Inc. Industrial Valley and Fidelity Title were subsequently dismissed by Dillow[2] and a First Amended Complaint was filed against the Magraws in five counts. The sole counts before this Court are: Count I, which alleges that the Magraws breached the special warranty contained in the deeds; Count IV alleging that the Magraws breached the covenant against encumbrances; Count V, which alleges breach of express and implied covenant of merchantable title; and Count VII, which alleges what essentially amounts to a claim for negligence on the part of the Magraws in the foreclosure proceedings.[3] On January 17, 1992, the Magraws filed a motion to dismiss the First Amended Complaint and, following a hearing, the circuit court dismissed Dillow's complaint in its entirety. This appeal followed.

Dillow presents three issues for our review, which we have recast as follows:

I. Did the Magraws' failure to designate Squire's heirs as defendants in their Complaint for Foreclosure of Equity of Redemption violate former section 103 of Article 81 of the Annotated Code of Maryland?

II. Does the failure to designate the proper defendants in a proceeding to foreclose equity of redemption render title

---

**2.** There is no evidence in the record as to nature of, or the circumstances surrounding, this dismissal.

**3.** Dillow also filed a Complaint to Quiet Title in the property in the Circuit Court for Cecil County. According to Dillow's First Amended Complaint, this Complaint to Quiet Title is captioned "Robert M. Dillow, et al. v. Mary R.H. Carter et al.," case no. 90187E. Dillow incorporated this Complaint in his First Amended Complaint by reference.

in the subject property defective and constitute a breach of the special warranty contained in the deed?

III. Does the failure to designate the proper defendants in a proceeding to foreclose equity of redemption constitute a breach of the covenant against encumbrances?

IV. Did the circuit court err in dismissing Dillow's claims for negligent redemption and breach of the warranty of merchantable title?

In answering these questions, we are mindful that the posture of this case as presented to us requires only that we review the propriety of the trial court's dismissal. We are not called upon to decide any of the numerous factual issues that appear to have been generated in this case. We answer "yes" to questions one and three, and "no" to questions two and four. Accordingly, we affirm the judgment of the trial court as to Count I (breach of special warranty), Count V (breach of express and implied covenant of merchantable title), and Count VII (negligence). We reverse the judgment of the trial court as to Count IV (breach of covenant against encumbrances).

## I.

█ We turn first to Dillow's allegation that the Foreclosure Complaint filed by the Magraws failed to name as defendants the heirs of Helen Rowland Squire. Dillow claims that these unidentified heirs owned an one-sixth interest in the subject property at the time the complaint was filed. He alleges that a title defect was created as a result of this error by the Magraws in the foreclosure.

At the time the Magraws filed their complaint to foreclose in October, 1983, Article 81 of the Annotated Code governed the procedure to be followed in tax sales.[4] Section 103 of

---

**4.** Both parties in this appeal have incorrectly cited section 14–836 of the Tax–Property Article as the applicable provision governing this case. Though this section was derived from former Article 81, section 103, it significantly amended section 103 in one respect. Section 14–836(b)(i)

Article 81 identifies the parties who must be named as defendants in the foreclosure proceeding:

The defendants in any such proceeding shall be the following:

(a) The *owner of the property* as disclosed by a search of the land records of the county, of the records of the register of wills of the county, and of the records of any court of law or equity of the county.

* * * * * *

(d) It shall not be necessary to name as defendant *any other person having or claiming to have any right, title, interest, claim, lien or equity of redemption in and to the property* sold by the collector. Any or all such persons may be included as defendants by the designation "all persons having or claiming to have any interest in property . . . . . (giving a description of the property in substantially the same form as the description which appears on the Collector's tax bill)." Any or all such persons may be designated throughout the proceeding by the above designation and the cause may proceed against them by publication under order of court as hereinafter provided.

(emphasis added).

The Magraws argue that they complied with section 103 by including in their Foreclosure Complaint the catch-all statutory language, "all persons having or claiming to have any interest in the property." The caption of the Foreclosure Complaint was as follows:

JAMES S. MAGRAW and DEBORAH L. MAGRAW
 Plaintiffs

vs.

---

presently provides that a defendant in an action to foreclose the right of redemption shall be "the record title holder of the property as disclosed by a search performed in accordance with generally accepted standards of title examination. . . ." This amendment imposes a reasonableness standard upon the plaintiff in conducting a title search to determine the named defendants in a foreclosure proceeding. This amendment would not, however, affect our holding in this case.

JAMES S. MAGRAW and *ALL Persons having or claiming to have any interest in the property* located in Cecil County, Maryland, described as 5.09 acres of land, more or less, with improvement thereon situated Rock–Battle Swamp Road, S/W of Woodlawn, District EQUITY NO. 7, adjoining the property of or formerly owned by John Carson

(emphasis added). The Magraws contend that this was all that was required. They claim that they could not have named the heirs of Ms. Squire as defendant "owners" because Ms. Squire died intestate and her property was, therefore, never bequeathed or devised to any of her heirs. They conclude that, as a result, the heirs never acquired actual ownership or record title in the property.[5] In support of this argument, the Magraws direct our attention to an "affidavit of search" attached to their Foreclosure Complaint, which certifies that a title search was performed on the subject property for the past forty years and no prior owners of the property were discovered.[6] Dillow argues in response that the affidavit of search is inaccurate and that a properly performed search

---

**5.** The Magraws argue further that neither Ms. Squire nor any of her heirs ever exhibited any indicia of ownership such as actual or constructive possession and that any interest they may have had was extinguished by adverse possession principles. We find this argument without merit.

**6.** Former section 105 of Article 81, which was applicable at the time of the foreclosure, required that every bill of complaint to foreclose the right of redemption filed against an unknown owner "shall have attached thereto an affidavit by the person making the search that the owner or owners of the property or a part thereof are unknown, although a complete search of the records as aforesaid for a period of at least forty years immediately prior to the institution of the suit has been made." Section 14–838 of the Tax–Property Article, which is currently in effect, is essentially the same as former section 105, though it also provides that the affiant must also state that the search was "performed in accordance with generally accepted standards of title examination."

The "Affidavit of Search" filed by the Magraws asserted that "[they] did make a search of all Orphans' Court, Equity, Land Records, Judgment Records, etc., in order to ascertain whether or not there were any other owners, or owner to said property."

would clearly have shown that six persons took the subject property as intestate heirs of Ms. Squire.

We note first that at the time of Ms. Squire's death in 1947, the applicable testamentary law held that title to a decedent's real property devolved directly to her heirs at law upon her death, without the necessity of administration by an administrator or personal representative. *Heill v. Staniewski,* 265 Md. 722, 723–24, 291 A.2d 449 (1972); *Campbell v. Welsh,* 54 Md.App. 614, 625, 460 A.2d 76 (1983).[7] Therefore, assuming as we must that Ms. Squire died leaving heirs, the Magraws' argument that these heirs never acquired an actual ownership interest or record title in the property is unavailing. The question remains, however, whether any such ownership interest would have been revealed by a properly performed title search. This is a factual issue that we have neither the authority nor the inclination to decide. Because this case is presented to us in the context of a motion to dismiss, we must assume, as Dillow's First Amended Complaint alleges, that Ms. Squire's heirs or any subsequent purchaser of the property would have been disclosed by a search of the land records in Cecil County.[8] Given this fact, we hold that as a matter of law, each such person would constitute an "owner" under section 103(a) of Article 81 rather than merely a party covered by the catch-all provision in subsection (d), "any other person having or claiming to have any right, title, interest, claim [or]

7. The law changed in 1970 with the legislature's rewriting of the testamentary laws. Since 1970, all real and personal property of a decedent passes directly to the personal representative who holds legal title for administration and distribution purposes. Md.Code Ann., Est. & Trusts § 1–301. The date of death of the decedent determines the applicable law. *Heill,* 265 Md. at 723, 291 A.2d 449.

8. While we cannot decide the factual issue that has been raised by the parties' contradictory contentions concerning the accuracy of the title search that was performed, we do note that the "being" clause in the two deeds does indicate that the grantor of the property to the Magraws was the Treasurer, Norman Hasson, by virtue of the tax sale. Certainly, Mr. Hasson's name would appear in the grantee index just as any other party who had an interest in the property. *See, Arnold v. Carafides,* 282 Md. 375, 383–84, 384 A.2d 729 (1978) (holding that "depth of search required by § 103 is more than a perfunctory one").

lien." Section 103(a) mandates that the "owner[s] of the property" be named as defendants when a title search would reveal them as owners. Ms. Squire's heirs should have been designated in the Magraws' Complaint as defendants and should have been notified of the foreclosure proceeding.[9]

## II.

We next address the effect of the Magraws' failure to name the heirs of Ms. Squires as defendants and the implications, if any, on Dillow's rights in the present action.

### A. Status of Title as a Result of Failure to Designate Proper Defendants in Complaint to Foreclose Equity of Redemption

■ Section 112 of Article 81 [10] provides that when a final decree is issued by the circuit court, the tax sale purchaser obtains "absolute and indefeasible title in fee simple in the property, free and clear of all alienations and descents of the property occurring prior to the decree of court as herein

---

9. The Court of Appeals has recently addressed "the serious question of [the] steps [that] must be taken by the tax sale purchaser to attempt to notify the property owner of the impending foreclosure of the right to redeem." *St. George Antiochian Orthodox Christian Church v. Aggarwal*, 326 Md. 90, 92, 603 A.2d 484 (1992). Though the Court in *Aggarwal* was concerned with the interpretation of section 14–839 of the Tax–Property Article, the principles enunciated by the Court in that case are also applicable here. In *Aggarwal*, the Court found that given the importance of the property right involved in the foreclosure of a right of redemption and the principles of due process implicated in such a proceeding, "manifest indifference" on the part of the plaintiff to the whereabouts of the defendant cannot be countenanced. *Id.* at 104, 603 A.2d 484. As the Court opined in *James v. Zantzinger*, 202 Md. 109, 114, 96 A.2d 10 (1953), "the statutory provisions as to notice required to terminate the taxpayer's right to redeem from a tax sale are mandatory and must be strictly followed."

The United States Supreme Court has also articulated the importance of apprising interested parties of the pendency of a foreclosure action. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

10. Article 81, § 112 was the statute in effect in August 1984, when the final decree was issued by the Circuit Court for Cecil County.

provided and encumbrances thereon...." This section further provides that the decree "shall be final and conclusive upon the defendants, their heirs, devisees and personal representatives and *they or any of their ... successors in right, title or interest ...* shall be bound by the said decree as if they had been named in the proceedings and personally served with process." (emphasis added). For cases discussing the finality of a decree, *see, Monumental Enters., Inc. v. Mayor & City Council of Baltimore City*, 26 Md.App. 24, 337 A.2d 176 (1975); *James v. Zantzinger*, 202 Md. 109, 113, 96 A.2d 10 (1952); *Oppenheimer v. Micbar Co., Inc.*, 192 Md. 192, 195, 63 A.2d 765 (1949).

■ The conclusiveness of the tax sale purchaser's title is, however, subject to two exceptions set forth in section 113 of Article 81. A final decree issued by a circuit court may be vacated or reopened on the grounds of either 1) lack of jurisdiction or 2) fraud in the conduct of the proceedings to foreclose. Art. 81, § 113. A lack of jurisdiction may exist where the property being foreclosed is not sufficiently described in the proceedings such that the property owners are not notified of their rights to foreclose, *Thomas v. Hardisty*, 217 Md. 523, 534–35, 143 A.2d 618 (1958), or where the property owners or their heirs are simply not notified of the foreclosure proceedings at all. *Brashears v. Collison*, 207 Md. 339, 347–48, 115 A.2d 289 (1955) (holding decree null and void due to failure to name owners of a remainder interest in property as defendants in foreclosure proceeding); *Holland v. Billingsley*, 208 Md. 635, 639–40, 119 A.2d 380 (1956) (holding that trial court properly rescinded decree where tax sale purchaser overlooked property owner's will in office of register of wills and, as a result, failed to name property owner's surviving wife and son as defendants).

■ In order to establish fraud as the basis for setting aside a final decree, the Court of Appeals has held that proof of "constructive" fraud is sufficient. *Jannenga v. Johnson*, 243 Md. 1, 5, 220 A.2d 89 (1966); *Scheve v. McPherson*, 44 Md.App. 398, 405, 408 A.2d 1071 (1979). Constructive fraud,

sometimes called "legal fraud," includes failure on the part of the foreclosing party to adequately search land records, court records, and register of wills' records, *Arnold v. Carafides,* 282 Md. 375, 383–84, 384 A.2d 729 (1978), as well as the failure to make at least a good faith effort to provide actual notice to owners of the property. *Jannenga,* 243 Md. at 5, 220 A.2d 89.

In the case *sub judice,* the decree issued by the circuit court in August, 1984, is vulnerable on grounds of lack of jurisdiction but not fraud in the conduct of the foreclosure proceedings. According to the allegations in Dillow's First Amended Complaint, a proper search of the land records would have disclosed some or all of Ms. Squire's six heirs and their ownership interest in the subject property. Assuming this is true, these persons were necessary defendants in the Foreclosure Complaint filed by the Magraws in October, 1983. Because the Magraws failed to name Ms. Squire's heirs in the proceeding, the circuit court lacked jurisdiction to render a decree foreclosing their right to redeem the property. We hold that the allegations in Dillow's First Amended Complaint are sufficient for present purposes to at least raise the issue of lack of jurisdiction and defeat the presumption that a final decree is, indeed, final and conclusive. As to the second ground for challenging the finality of the decree—constructive fraud on the part of the Magraws—we need not address this issue since any such claim would be barred under the one-year statute of limitations set forth in then applicable section 113 of Article 81.[11]

In so holding, we recognize that a decree foreclosing the right of redemption cannot be set aside except by a petition filed by the original owners whose rights were foreclosed and that there is no evidence in the record that the

---

11. Section 113 of Article 81 provided that "no reopening of any final decree on the ground of constructive fraud in the conduct of the proceedings to foreclose shall be entertained unless the application therefor with regard to the decrees heretofore rendered is made ... within one year from the date of the final decree." Section 113 did not provide any similar time period for when lack of jurisdiction is alleged in a petition to vacate a final decree.

heirs of Ms. Squire are, in fact, contesting the foreclosure proceedings initiated by the Magraws. This does not, however, necessarily preclude a third-party such as Dillow from asserting that the foreclosure proceedings were faulty, and that, as a result, he has suffered damages. The Court of Appeals has held that the validity of a final decree may be subject to "collateral" attack, i.e., in a suit other than one directly seeking to vacate the decree. *Thomas v. Hardisty,* 217 Md. 523, 535–37, 143 A.2d 618 (1958).[12] The Court in *Thomas* stated:

> [I]t would seem to be an unnecessary refinement to make a distinction between an application to reopen a decree because of lack of jurisdiction to enter it and a collateral attack intended to show that the decree is a nullity for precisely that same reason.

*Id.* at 537, 143 A.2d 618. *See also, Bugg v. State Roads Comm'n,* 250 Md. 459, 461, 243 A.2d 511 (1968); *Board of Medical Examiners v. Steward,* 207 Md. 108, 112, 113 A.2d 426 (1955) ("A judgment that is a nullity, because the court lacked jurisdiction to render it, may be disregarded, even in a collateral proceeding . . . ."); *Mullen v. Brydon,* 117 Md. 554, 83 A. 1025 (1912).

---

**12.** Thomas filed a bill to quiet title in property against Hardisty who had purchased the property at tax sale. *Thomas,* 217 Md. at 527, 143 A.2d 618. Thomas was the original owner of the property and apparently was still in possession. Thomas claimed that the court lacked jurisdiction and the decree should be set aside because Hardisty erroneously described the property in the tax sale advertisement and in the foreclosure proceedings. Thomas also alleged that he was identified in the foreclosure proceedings as "H. Granville Thomas, Jr." instead of "Henry Granville Thomas, Jr." and that Hardisty misstated his address as "unknown." The Court of Appeals found that the property description was erroneous and not sufficient to give notice to Thomas. The Court held that, as a result, the circuit court lacked jurisdiction, the tax sale was invalid, and Thomas' bill sufficiently alleged a cause of action for annulment of the tax sale and of the deed.

The Court recognized that Thomas' bill to quiet title was not a direct suit to vacate the decree (though Thomas was a party who could do so since he was an original owner of the property) but rather a collateral attack. The Court noted that while it was treating the case before it as if it were in form and substance a proceeding directly seeking to reopen a decree, Thomas's bill to quiet title had substantially the same effect.

█ We turn now to the effect, if any, that the lack of jurisdiction had on the title to the property as presently held by Dillow. It is generally accepted that a defect in the conduct of a tax sale proceeding may render title to the subject property defective and unmarketable. *See e.g., Smith v. Huber,* 224 Iowa 817, 277 N.W. 557 (1938) (holding that title was not good and merchantable where there was failure to provide notice of right to redeem to title owners in tax sale proceeding). The Maryland courts have similarly held. In *In re Swann's Estate,* 125 Md. 519, 94 A. 93 (1915), a purchaser of thirty acres of land refused to consummate a contract of sale on the ground that title to the property was not good and marketable. The purchaser claimed that sufficient notice of tax sale was not given to several co-owners of the property since the required notice was merely addressed to the "heirs" of the property's former owner. The Court of Appeals held that there was "manifest failure" to observe the notice re-quirements and that, as a result, title was not good and marketable. The Court further stated that the fact that the original owners had not yet challenged the tax sale did not prevent the purchaser from asserting that the lack of notice affected the marketability of his title:

> While a considerable period has elapsed since the tax sale was made and ratified, and while those adversely affected have taken no formal action to have the sale annulled, the present purchaser could have no assurance that they will not contest the title.... It would not be just to compel the objecting purchaser to accept a title thus exposed to proba-ble litigation. As it stands at present it is not the good and marketable title which he has a right to demand.

*Id.* (citations omitted).

In the present case, assuming the truth of all facts alleged by Dillow, we hold that title to the subject property was rendered defective and unmarketable as a direct result of the Magraws' failure to name the proper parties as defendants in their Foreclosure Complaint. If the Magraws had complied with Article 81 and named Squire's heirs as defendants, we must assume that the heirs would have exercised their right to

redeem or, alternatively, would have voluntarily foregone this right. In either event, there would not presently be a cloud on the title.

The question remains, however, whether the failure to designate Squire's heirs as defendants and the resulting defect in title constitutes a breach of special warranty.[13]

### B. Breach of Special Warranty

 The effect of the Magraws' failure to name Ms. Squire's heirs as defendants is, of course, that the heirs were not granted the opportunity to pay the back taxes and redeem the property. We cannot speculate whether or not the heirs were financially able, or otherwise inclined, to redeem the property, but it is clear that were they granted the opportunity they would presently have an action against Dillow in which they could claim superior or paramount title to the property. We hold that the special warranty in the deeds would not protect Dillow from such a claim.

The legislature has codified the scope and effect of a special warranty in section 2–106 of the Real Property Article:

A covenant by a grantor in a deed, 'that he will warrant specially the property hereby granted,' has the same effect as if the grantor had covenanted that he will warrant forever and defend the property to the grantee against any lawful claim and demand of the grantor and every person claiming or to claim by, through, or under him.

Md.Code Ann., Real Prop., § 2–106.

The Magraws argue that a grantor does not warrant in a special warranty that he is the true owner of the property, or that he will protect the grantee against all claims of superior or paramount title. They contend, therefore, that any poten-

---

13. Both deeds contained the following provision:

And the said parties of the first part hereby covenant that they have not done or suffered to be done any act, matter or thing whatsoever, to encumber the property hereby conveyed; that they will warrant specially the property hereby granted; and that they will execute such further assurances of the same as may be requisite.

tial claims of superior or paramount title by Ms. Squire's heirs against Dillow would not be covered under the special warranty contained in the two deeds. The Magraws also rely on the language in section 2–106 which provides that under a special warranty a grantor warrants that he will defend the grantee only against any claims "by, through or under him." According to the Magraws, the allegations in Dillow's complaint indicate that there is no one, in fact, claiming title "by, through or under [the Magraws]." We agree with the Magraws for several reasons.

 First, a special warranty does not protect the grantee from claims of superior or paramount title. A covenant of special warranty, in contrast to a covenant of general warranty, is limited as to the persons or claims to which it operates. It protects the covenantee against claims by, through or under the grantor, but does not warrant title "against a claim under a title against, or superior to, his grantor." 20 Am.Jur.2d, *Covenants, Conditions, and Restrictions,* § 53 at pp. 624–25 (1965). *See also, Central Life Assur. Soc. v. Impelmans,* 13 Wash.2d 632, 126 P.2d 757, 763 (1942). In *Gittings v. Worthington,* 67 Md. 139, 150, 9 A. 228 (1887), the Court of Appeals stated:

"[S]pecial warranties [are] distinct covenants that [the grantor is] not to be answerable for any losses which might occur from the assertion of a title superior to his own; that if he is required to protect [the grantee] from [claims of superior title], he is in effect made to give [the grantee] all the benefit which could be derived from a general warranty . . . ."

 Here, Dillow seeks protection against the potential claims of Ms. Squire's heirs, who he alleges have an outstanding and superior ownership interest in the subject property by virtue of the Magraws' failure to properly foreclose their rights of redemption. We hold that while a covenant of general warranty might extend to such claims, the special warranty contained in the two deeds does not. The mere

existence of paramount title does not constitute a breach of special warranty.

The defect in the foreclosure proceedings would also not be covered under the special warranty for the simple reason that the Magraws did nothing during their period of "ownership" to impair title; stated differently, title to the property was not vested in them at the time the alleged "defect" arose. The Court of Appeals in *Kendall v. Rogers,* 181 Md. 606, 611, 31 A.2d 312 (1943), explained that the coverage of a special warranty deed includes "any act impairing the title during the holding of the property by the grantor." A special warranty deed makes no covenant as to the status of title prior to title actually vesting in the grantor. *See Campbell v. Heller,* 36 N.J.Super. 361, 115 A.2d 644, 648 (1955); *Wempe v. Schoentag,* 163 Md. 647, 649, 163 A. 868 (1933); *Kendall,* 181 Md. at 611, 31 A.2d 312. In the case of property purchased at tax sale, title does not vest in the tax sale purchaser until a final decree is issued. *See,* Part II.A., *supra.* The tax sale purchaser has neither legal nor equitable title but is said to have merely a lien against the property, which ripens into title through the process of foreclosure. *Voge v. Olin,* 69 Md.App. 508, 522, 518 A.2d 474 (1986) (citing *Prince George's Homes, Inc. v. Cahn,* 283 Md. 76, 85, 389 A.2d 853 (1978)); *Stewart v. Wheatley,* 182 Md. 455, 458, 35 A.2d 104 (1943); 4 Tiffany, *The Law of Real Property,* § 1248 at p. 1152–53 (3d ed. 1975).[14] *See also, Keefauver v. Richardson,* 233 Md. 545, 197 A.2d 438 (1964); *Winter v. O'Neill,* 155 Md. 624, 142 A. 263 (1928). The final decree in this case was issued on August 28, 1984. Until that date, the Magraws' interest in the property was in the nature of an inchoate lien. Anything they did to impair title would not be covered by a special warranty.

Lastly, Dillow's claim is not covered under the special warranty because a claim attacking the validity of

---

**14.** The money value of such a lien is the amount required to effect a redemption of the property. 2 Patton on Land Titles, § 586 at p. 514 (2d ed. 1957).

foreclosure proceedings is not one brought "by, through or under" the grantor as § 2–106 of the Real Property Article commands, but is rather one "through" or "under" the heirs of Ms. Squire. Dillow is contesting the invalidity of the foreclosure proceeding on the heirs' behalf. He is not alleging that the Magraws, or anyone claiming by, through, or under them, such as their heirs or assigns, are challenging Dillow's title to the subject property. While such collateral attacks of a final decree as Dillow's are generally permissible (see discussion in Part II.A.), claims which are not "by, through or under" the grantor do not fall within the scope of a special warranty. *See, Monumental Enters., Inc. v. Mayor & City Council of Baltimore City*, 26 Md.App. 24, 38, 337 A.2d 176 (1975) (characterizing claim by mortgagee of original owner of property as one "claiming under" the original owner); *Oppenheimer v. Micbar Co., Inc.*, 192 Md. 192, 195, 63 A.2d 765 (1949) (characterizing claim by subsequent purchaser attacking validity of tax sale as one "under the original owners").[15]

We hold, therefore, that as a matter of law the failure by a purchaser of property at tax sale to name the proper defendants in a complaint to foreclose equity of redemption does not constitute a breach of special warranty when the tax sale purchaser subsequently conveys that property by deed.

---

**15.** The Magraws also contend that Dillow has failed, as a matter of law, to allege any breach of the covenant of special warranty, since there is no allegation in the First Amended Complaint that Dillow has been evicted from the property. It is generally recognized that an eviction, actual or constructive, is necessary in order to establish a breach of a covenant of warranty. *Boulden v. Wood*, 96 Md. 332, 340, 53 A. 911 (1903); *see also, Sandler v. New Jersey Realty Title Ins. Co.*, 36 N.J. 471, 178 A.2d 1, 8–9 (1962); *Camden County Welfare Bd. v. FDIC*, 1 N.J.Super. 532, 62 A.2d 416, 428 (Ch.Div.1948); *Schneider v. Lipscomb County Nat'l Farm Loan Ass'n*, 146 Tex. 66, 202 S.W.2d 832 (1947); *Bronaugh v. John*, 96 Okl. 164, 221 P. 32, 33 (1923); *Kellog v. Platt*, 33 N.J.L. 328, 334 (1869); 20 Am.Jur.2d, *Covenants, Conditions and Restrictions*, §§ 57–58 (1965). Because we hold, as a matter of law, that the failure of the Magraws to name the heirs of Ms. Squire as defendants in their Foreclosure Complaint would not be covered under a special warranty, we need not address the Magraws' further contention that there has been no eviction.

For the reasons cited above, the lower court properly dismissed Count I of Dillow's First Amended Complaint.

## III.

We next address whether the defect in title that exists as a result of the Magraws' failure to name the heirs as defendants (see Part II.A.) would constitute a breach of the covenant against encumbrances. The lower court summarily dismissed this count of Dillow's complaint on the basis that there could not be a breach of the covenant against encumbrances because there was no breach of special warranty.[16] We disagree.

The legislature has codified the scope and effect of a covenant against encumbrances. Section 2–110 of the Real Property Article provides:

A covenant by the grantor in a deed, "that he has done no act to encumber the land," has the same effect as if he had covenanted that he had not done, executed, or knowingly suffered any act or deed whereby the land granted, or intended to be, or any part of it, are or will be charged, affected, or encumbered in title, estate, or otherwise.

Contrary to the lower court's ruling, the scope of this covenant is considerably broader than a special warranty. The Court of Appeals has stated:

The object of the stipulation against encumbrances [is] to assure and protect the vendee, and to relieve him of all danger that could result from the possible existence of incumbrances, whereby his estate might be lessened in value, and he be disturbed in the peaceable enjoyment thereof.

*Bryant v. Wilson,* 71 Md. 440, 442, 18 A. 916 (1889). In contrast to a special warranty, the protection afforded by a

---

16. In fact, the trial court dismissed all of Dillow's counts stating that "they came down to that [special] warranty. If it's not a violation of special warranty, which I find is it [sic] not, I think your case falls short."

covenant against encumbrances is not limited to claims "by, through or under the grantor"; rather it extends to claims by third parties that may reduce the value of the property. The Court of Appeals, in *Marathon Builders, Inc. v. Polinger*, 263 Md. 410, 416, 283 A.2d 617 (1971), stated:

> It thus appears that the covenant against encumbrances protects the covenantee, its successors and assigns, against rights or interests in the property conveyed which *subsist in third persons* and diminish the value of *the estate* even though they are consistent with the passage of the fee in the estate.

(emphasis in original). *See also, Levine v. Hull*, 135 Md. 444, 446, 109 A. 141 (1919) (citing *Huyck v. Andrews*, 113 N.Y. 81, 20 N.E. 581 (1889)).[17]

We have found no Maryland cases which address the scope of a covenant against encumbrances in the context of a faulty tax sale proceeding. Indeed, very few decisions in Maryland have even discussed the covenant against encumbrances.

In *Levine*, the purchasers of five lots of land brought suit for damages against the sellers of the property for breach of special warranty and breach of covenant against encumbrances. 135 Md. at 445, 109 A. 141. It was alleged that these covenants were breached several years after the purchase when a right of way to the property was asserted by a third party. The third party had successfully brought an action for injunctive relief against the purchasers to prevent them from interfering with their use of the right of way. The seller's demurrer was sustained by the trial court and the purchaser appealed. Preliminarily, the Court set out to deter-

---

**17.** A covenant against encumbrances is not a covenant running with the land but is rather in the nature of a personal covenant. *Levine*, 135 Md. at 447, 109 A. 141. It operates *in praesenti* and is breached, if at all, at the time of the conveyance of the deed. *Marathon Builders*, 263 Md. at 414, 283 A.2d 617 (citing Tiffany, *The Law of Real Property* (3d ed. 1939)). A special warranty, in contrast, is not a personal covenant but runs with the land. It is said to be a covenant *in futuro*, which may be breached when the deed is conveyed or by the occurrence of subsequent events. *Marathon Builders*, 263 Md. at 414, 283 A.2d 617.

mine whether the covenant against encumbrances was "to be regarded simply as a covenant for special warranty . . . or [whether] the covenant against encumbrances [had] a wider scope and effect than [that]. . . ." *Id.* The Court, however, did not answer this question since it found that the purchasers failed to allege the existence of the encumbrance "sufficiently anterior to the conveyance of the title to them to have had the same expire, since it was a personal covenant merely. . . ." *Id.* at 447, 283 A.2d 617. This holding suggests that had the purchasers alleged that the right of way preexisted the conveyance then the covenant against encumbrances would have been breached.

In *Tri–State Properties, Inc. v. Middleman,* 238 Md. 41, 207 A.2d 499 (1965), Tri–State entered into a contract with Middleman to purchase fifteen acres of land. The contract was subject to Middleman obtaining a change in zoning to permit no less than 300 apartment units on the property. If the proper zoning was not obtained within one year, Tri–State had the right to cancel the contract of sale within 30 days or otherwise accept the property "as is." *Id.* In the contract of sale, Middleman warranted that the property was sold free of encumbrances. Middleman was unable to obtain the change in zoning within one year, yet no notice was given by Tri–State within 30 days. Before the expiration of this thirteen month period, however, an action was filed by the Maryland–National Capital Park and Planning Commission against the City of Laurel, Maryland, involving an alleged dispute as to which entity had the jurisdiction to zone the property. Having waived its right to cancel the contract, Tri–State sought to avoid performance under the contract by arguing that this suit was an encumbrance in violation of the covenant against encumbrances. The Court of Appeals disagreed, reasoning that the suit did not "affect" title to the property and therefore did not constitute an encumbrance. The Court concluded that "it is difficult to discern how a suit to determine which of two agencies had the right to zone the property, should have any effect on the contract whatsoever, much less be an 'encumbrance' on the property." *Id.* at 46, 207 A.2d 499.

The Court of Appeals has held that an unpaid utility benefit charge may constitute an encumbrance, even though it is not yet due. In *Manor Real Estate Co. v. Joseph M. Zamoiski Co.*, 251 Md. 120, 121, 246 A.2d 240 (1968), Zamoiski contracted with Manor to purchase six acres of land in an industrial park. The contract required Manor to deliver the property "clear of all liens and encumbrances." *Id.* at 122, 246 A.2d 240. On or about the date of closing, Zamoiski learned for the first time that there was an unpaid benefit charge by the Washington Suburban Sanitary Commission (WSSC) on the sewer and water facilities at the property. The Prince George's County Code provided that "the benefit charge may be extinguished or redeemed, at any time, upon payment" of a determinable amount, which the parties had agreed was, at the time, $10,130.76. *Id.* at 127, 246 A.2d 240. Zamoiski later brought suit seeking recovery of this amount. Manor argued that the covenant against liens and encumbrances in the contract applied only to existing liens, not to "future potential liens." *Id.* The WSSC benefit charge, Manor contended, was similar to county taxes because it was collected annually and did not become a lien until the year when it is collectible. The Court of Appeals found Manor's argument unconvincing. The Court did not reach the question of whether the benefit charge constituted a lien, holding that the charge was an encumbrance even if it was not a lien. The Court stated that "present liability [for] an eventual lien may be sufficient to establish an encumbrance." *Id.* at 130, 246 A.2d 240 (citing 20 Am.Jur.2d, *Covenants, Conditions, and Restrictions*, § 87 (1965)). The Court concluded that regardless of whether the benefit charges were due or whether they had yet been redeemed or extinguished, the charges were an encumbrance that violated the covenant against encumbrances in the contract.

Decisions in other states demonstrate that a variety of "rights" subsisting in third parties may constitute an encumbrance, including an easement granted over the property by the sellers to the owners of abutting property prior to conveyance to the purchaser, *Rhodes v. Astro–Pac, Inc.*, 41

N.Y.2d 919, 394 N.Y.S.2d 623, 363 N.E.2d 347 (1977); *Harvey v. J & H Holdings, Inc.*, 310 So.2d 371, 372 (Fla.1975); a judgment lien on the property, even though no actions were pending to enforce the lien and the covenantee had not yet been disturbed in title, *Fechtner v. Lake County Sav. & Loan Ass'n*, 66 Ill.2d 128, 5 Ill.Dec. 252, 361 N.E.2d 575 (1977); a sublease providing that it would be binding even if the lessee defaulted, *Schaefer v. Bonner*, 469 S.W.2d 216 (Tex.Civ.App. 1971); a recorded right of way given by seller to electric company prior to agreement with purchaser, *Volkert v. Swan*, 197 Pa.Super. 576, 179 A.2d 274, 275 (1962); water rights with the attendant right to enter the land held by a third person, *Olcott v. Southworth*, 115 Vt. 421, 63 A.2d 189, 191 (1949); a right given to adjoining land owner to maintain a dam, *Geyer v. Walton*, 151 Pa.Super. 549, 30 A.2d 643, 644 (1943).

Our review of these cases, both in Maryland and in other states, convinces us that the unclaimed right of redemption which presently exists in the heirs of Ms. Squire constitutes an encumbrance on the subject property. While the Maryland courts have not, until now, addressed this issue, we believe that this right of redemption is of kindred spirit with the cases cited above. First, the right of redemption held by each heir is a "right[ ] or interest[ ] in the property conveyed which subsist[s] in [a] third person[.]" *Marathon Builders*, 263 Md. at 416, 283 A.2d 617. While this "right or interest" is inchoate in nature, it exists nonetheless. The final decree issued in August, 1984, may be set aside at anytime by the heirs due to the lack of jurisdiction of the circuit court. (See Part II.A.) Second, the existence of the right of redemption in the heirs has the effect of diminishing the value of the property. According to the First Amended Complaint, Dillow alleges that he has been unable to obtain financing to complete construction of the houses on the property and cannot sell the land. Third, this encumbrance on the property was not created after conveyance of the property to Dillow, but rather preexisted the contract of sale. *See Levine*, 135 Md. at 447, 109 A. 141. It was, therefore, within the "scope" of the

Magraws' covenant.[18] Lastly, the encumbrance directly "affects" title to the property. *See Tri–State Properties*, 238 Md. at 44, 207 A.2d 499. As we concluded above, title to the subject property was rendered defective and unmarketable as a direct result of the Magraws' failure to name the proper parties as defendants in their Foreclosure Complaint. Not every defect in title constitutes an encumbrance, but we hold that the failure to designate properly all "owners" of property in a foreclosure proceeding sufficiently encumbers the property so as to fall within the scope of the covenant against encumbrances. Before determining whether Dillow has properly alleged a cause of action for breach of covenant against encumbrances, we must decide whether the Magraws are legally capable of breaching the covenant.

The Magraws covenanted "that they have not done or suffered to be done any act, matter of thing whatsoever, to encumber the property hereby conveyed." As we noted in section II.B. *supra,* a covenant of special warranty is limited to acts "impairing the title during the holding of the property by the grantor," *Kendall,* 181 Md. at 611, 31 A.2d 312, i.e., while holding legal or equitable title to the property. While tax sale purchasers have neither legal nor equitable title, they do retain a lien that ripens into title through the process of foreclosure of the equity of redemption. *Stewart,* 182 Md. at 458, 35 A.2d 104; *Voge,* 69 Md.App. at 522, 518 A.2d 474. It has been said that a tax sale purchaser's interest is similar to

---

**18.** We note that actual or constructive knowledge by Dillow of the existence of the encumbrance will not defeat his claim for breach of the covenant. The late Judge Eli Frank, who wrote a book on Maryland law regarding covenants against encumbrances, has stated:

Even though the grantee has knowledge of the existence of encumbrances at the time of delivery of the deed to him containing a covenant against encumbrances, he is still entitled to the full benefit of the covenant. He is not bound to insist upon the removal of the encumbrances prior to the acceptance of the title, even though the contract of sale bound the vendor to convey a title, free of encumbrances. He may prefer to accept the encumbered title and rely on his action *in personam* against the grantor.

Eli Frank, *Title to Real and Leasehold Estates and Liens,* at p. 98 (1912) (citing *Bryant v. Wilson,* 71 Md. at 442, 443, 18 A. 916 (1889)).

that of a mortgagee, *Hardisty v. Kay*, 268 Md. 202, 212, 299 A.2d 771 (1973), albeit that, unlike a mortgagee, the tax sale purchaser does not have legal title. In any event, a tax sale purchaser has an interest in property, which can affect title to the property.

A covenant against encumbrances is a personal one, and does not run with the land. *Levine*, 135 Md. at 447, 109 A. 141.[19] As we indicated above, the type of covenant against encumbrances executed in the case *sub judice* has the effect of covenanting that the Magraws did nothing to encumber the title to the subject property. By failing to notify Squires' heirs, the Magraws committed the very act they covenanted against. Thus, they allegedly encumbered the property by creating a defect in the title thereto. Dillow has properly alleged this cause of action in his First Amended Complaint. Accordingly, we hold that a party who has an interest in land and encumbers it before acquiring legal title may be liable to his or her grantee for breach of the personal covenant against encumbrances.

We note that there is no indication in the First Amended Complaint as to whether the unnamed heirs of Ms. Squire have yet asserted their still existing right of redemption in any way or in any form. Some courts in the country have held that if the grantee has not been pressured by the "owner" of the encumbrance or has not attempted to cure, then he is entitled to only nominal damages, even if he has already suffered actual consequential damages as a result of the encumbrance. *See generally*, Natelson, *Modern Law of Deeds*

---

**19.** We also observe that it is somewhat limited as compared with the "general covenant against encumbrances" embodied in § 2–111 of the Real Property Article which states:

A covenant by the grantor in a deed, 'that the land is free and clear of all encumbrances' has the same effect as if he covenanted that neither he nor his predecessors in his chain of title had done, executed, or knowingly suffered any act or deed whereby the land granted, or intended to be granted, or any part of it, are or will be charged, affected, or encumbered in title, estate, or otherwise.

Md.Code Ann., Real Prop. § 2–111.

*to Real Property,* § 12.6 at pp. 324–25 (1992). This rule has been criticized on the basis that it imposes a requirement of eviction that is commonly applied only to covenants of warranty. We need not address here whether proof of the encumbrance in this case would warrant merely nominal damages or more; it is sufficient for present purposes that a complaint to quiet title has been filed, and is pending, in which the heirs of Ms. Squire are parties. *See supra* note 3.

## IV.

Dillow argues that the lower court erred in dismissing Count V (breach of express and implied covenant of merchantable title) and Count VII (negligent redemption) of the First Amended Complaint. Again, he contends that the court dismissed these counts without addressing them individually and merely on the basis that there was no breach of special warranty. We hold that the lower properly dismissed both Count V and Count VII.

Count V alleges "[t]hat by their execution of the deeds of August 2, 1988 and November 7, 1988 [the] Magraw[s] did both expressly and implicitly represent and covenant that they had good and merchantable title to the subject property." Our review of the two deeds indicates that neither deed expressly warrants that title to the property will be good and merchantable as alleged by Dillow. Therefore, while title was clearly defective and unmarketable (See Part II.A.), Dillow's claim must fail. We note that any similar covenant or warranty in the contract of sale would have excused Dillow's performance or would have entitled him to rescind the contract. However, once the contract is executed and the deed is accepted, under the merger doctrine there is a prima facie presumption that the rights of the parties are governed entirely by the deed. *Heckrotte v. Riddle,* 224 Md. 591, 595, 168 A.2d 879 (1961); *Gilbert Constr. Co. v. Gross,* 212 Md. 402, 409, 129 A.2d 518 (1957). This presumption may be negated by a contract provision that the terms of the contract survive the settlement, *Randolph Hills, Inc. v. Shoreham Developers,*

*Inc.,* 266 Md. 182, 193–94, 292 A.2d 662 (1972), or when the parties intend that the provisions of the contract survive and do not merge into the deed, *Erlewine v. Happ,* 39 Md.App. 106, 111, 383 A.2d 82 (1978). Dillow has alleged neither in the First Amended Complaint.

 Count VII alleges what essentially amounts to a claim for negligence on the part of the Magraws in the foreclosure proceedings. Dillow himself characterizes this claim as "somewhat unusual," yet contends that the lower court failed to even address the merits of the claim. There is no cause of action recognized in Maryland for negligent foreclosure of redemption rights, and we decline to create one.

JUDGMENT REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.